**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LANDMARK LEGAL FOUNDATION** )<br><br>**Plaintiff,** )<br><br>**v.** )<br><br>**ENVIRONMENTAL PROTECTION**<br>**AGENCY** )<br><br>**Defendant.** ) | **Civil No. 12-1726 (RCL)** |

<u>**MEMORANDUM OPINION**</u>

Plaintiff Landmark Legal Foundation ("Landmark") has moved for a preliminary injunction compelling defendant Environmental Protection Agency ("EPA") to preserve certain records, expedite processing of Landmark's Freedom of Information Act ("FOIA") request, and produce certain records by 5 p.m. on December 24, 2012.  Upon consideration of Landmark's Motion [14] for Preliminary Injunction and Request for Expedited Consideration, EPA's Opposition [16], Landmark's Reply [17], the entire record in this case, and the applicable law, the Court will DENY the Motion for Preliminary Injunction.

A brief description of the Court's reasoning follows and a separate Order consistent with this Opinion shall issue this date.

I.      **BACKGROUND**

On August 17, 2012, Landmark, a "national public interest law firm," submitted a FOIA request to the EPA requesting records regarding any EPA rule or regulation for which public notice has not been made, but which was contemplated or under consideration for public notice

between January 1, 2012 and August 17, 2012.[1]  Compl. ¶ 10, ECF No. 1.  The genesis of the FOIA request was Landmark's suspicion, based on news reports, that the EPA may have intentionally delayed a "controversial" regulation until after the November 2012 presidential election.  Compl. ¶ 6.  Landmark expressed concern about the possibility that "a) the Obama Administration is improperly politicizing EPA activities; b) EPA officials are attempting to shield their true policy goals from the public; and/or c) EPA officials themselves are putting partisan interests above the public welfare."  Compl. ¶ 9.

The EPA acknowledged receipt of the FOIA request but denied Landmark's request for expedited processing.  Compl. ¶ 13.  Landmark administratively appealed, and EPA denied the appeal because Landmark had not shown it was "primarily engaged in disseminating information to the public" as required by FOIA for expedited processing.  Letter from Kevin M. Miller, Assistant Gen. Counsel, U.S. Envtl. Prot. Agency, to Mark Levin, Landmark Legal Found. (Oct. 18, 2012), ECF No. 1-6.  The EPA also stated that Landmark would not meet the "urgency" requirement for expedited processing.  *Id.*  Landmark subsequently filed this suit.

Landmark's Complaint sought orders directing EPA to preserve all records potentially responsive to Plaintiff's FOIA request; declaring that the EPA wrongfully denied Landmark's expedited processing request, that it must immediately conduct an expedited search and produce all responsive records; and declaring that Landmark is an entity "primarily engaged in

---

[1] Specifically, the request sought: "1. Any and all records identifying the names of individual, groups and/or organizations outside the EPA with which the EPA, EPA employees, EPA contractors and/or EPA consultants have had communications of any kind relating to all proposed rules or regulations that have not been finalized by the EPA between January 1, 2012 and August 17, 2012.  For the purposes of this request, 'communications of any kind' does not include public comments or other records available on the rulemaking docket.  2. Any and all records indicating an order, direction or suggestion that the issuance of regulations, the announcements of regulations and/or public comment of regulations should be slowed or delayed until after November 2012 or the presidential elections of 2012."  Letter from Mark R. Levin, President, Landmark Legal Found., to Nat'l Freedom of Info. Officer, U.S. Envtl Prot. Agency (Aug. 17, 2012), ECF No. 1-3, hereinafter [Pl.'s FOIA Request].  This request was subsequently limited to communications by senior EPA officials.

disseminating information" for purposes of expedited processing under FOIA.   Compl. 5.
Finally Landmark requested attorneys' fees and costs.  *Id.*

In late November, the EPA notified Landmark that it intended to produce all documents
responsive to the request on or before January 31, 2013.  Hutchison Aff. ¶ 7, ECF No. 14-4.

Also in late November, the EPA issued a proposed rule[2]—Reconsideration of Certain
New Source and Startup/Shutdown Issues ("November proposed rule")[3]—which Landmark
characterizes as "extremely politically controversial" and "'expected to be one of the most costly
rules ever issued by EPA.'"  Pl.'s Stmt. P. & A. in Supp. of Pl.'s Mot. for Prelim. Inj. 4, ECF No.
14-1 [hereinafter Pl.'s Stmt. P. & A.].  Landmark argues that the rule was originally finalized on
February 16, 2012, but that EPA later announced it would reconsider the rule; thus, Landmark
argues that communications regarding this rule fall within the FOIA request.  *Id.*

Landmark now seeks a preliminary injunction ordering production of records related to
this proposed rule by 5 p.m. on December 24, 2012.  Pl.'s Stmt. P. & A. 1.  Landmark also seeks
an order compelling expedited processing of all additional records responsive to Landmark's
FOIA request, and compelling EPA to preserve all responsive information, and directing the
EPA Administrator to ensure that any order of this Court is carried out.[4]  Pl.'s Stmt. P. & A. 2.

## II.    DISCUSSION

### A.    Preliminary Injunction Requiring Expedited Processing

---

[2] Landmark mistakenly characterizes the rule as a Final Rule, likely because the rule was inadvertently published in
the final rule section of the Federal Register.  A correction was issued on December 5, 2012 and the EPA extended
the public period from December 31, 2012 to January 7, 2013.  *See* 77 FR 73968.

[3] The full title of the rule is: Reconsideration of Certain New Source and Startup/Shutdown Issues: National
Emission Standards for Hazardous Air Pollutants From Coal- and Oil-Fired Electric Utility Steam Generating Units
and Standards of Performance for Fossil-Fuel-Fired Electric Utility, Industrial-Commercial-Institutional, and Small
Industrial-Commercial-Institutional Steam Generating Units.  77 FR 71323.

[4] Landmark does not provide any argument or support for its request that the EPA Administrator be directed to
ensure any Court order is carried out.  Given that the Court declines to issue a preliminary injunction, there is no
need for the Court to further address this aspect of Landmark's motion.

The Court may grant preliminary injunctive relief when the movant demonstrates:

> (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction.

*Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998)

Preliminary injunctive relief is an extraordinary form of judicial relief and courts should thus grant it sparingly. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Additionally, any preliminary injunctive relief should be carefully circumscribed to remedy the harm shown. *Nat'l Treasury Employees Union v. Yeutter*, 918 F.2d 968, 977 (D.C. Cir. 1990) (citation omitted).

The circuits split on whether courts should balance the four preliminary injunction factors on a sliding scale, as they have traditionally done, or whether each factor must now be established independently. The D.C. Circuit has not yet resolved this question for courts in our circuit;[5] however, the debate is academic here since Landmark's claim fails under even the more forgiving sliding scale test.

### 1. Landmark Has Not Shown Substantial Likelihood of Success on the Merits

Landmark argues that the standard for evaluating the likelihood of success on the merits turns not on whether the requester will *receive* any documents, but whether plaintiff is entitled to full processing of its FOIA request. Pl.'s Stmt. P. & A. 5 (citing *Wash. Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 67 (D.D.C. 2006)). However, Landmark seeks expedited processing of its request for documents regarding the November 2012 proposed rule as well as

---

[5] *See Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011) (noting disagreement among the circuits and among judges on the D.C. Circuit regarding how to evaluate the factors but concluding that "[w]e need not wade into this circuit split today" because an injunction would not be appropriate under either test); *but see In re Navy Chaplaincy*, 697 F.3d 1171, 1178 (D.C. Cir. 2012) ("We review the district court's ultimate decision to deny injunctive relief, as well as its *weighing* of the preliminary injunction factors, for abuse of discretion." (emphasis added)).

other proposed rules considered but not finalized between January 1 and August 17, 2012; thus, the question with respect to these two claims is whether Landmark is entitled to *expedited* processing and not just whether it is entitled to a response.

Courts review agency decisions denying expedited processing de novo.  5 U.S.C. § 6(E)(iii), *id.* § 4(B).  Additionally, "judicial review shall be based on the record before the agency *at the time of the determination*."  *Id.* § 6(E)(iii) (emphasis added).

As a preliminary matter, the Court believes that Landmark's request for expedited processing may be moot.  If it is, this alone would prevent Landmark from showing a likelihood of success.  Expedited processing requires only that an agency process the request "as soon as practicable."  The statute does not assign any particular time frame to release of the records sought.  This Court has previously noted that an award of expedited processing only moves the plaintiff's request "to the front of the agency's processing queue, as provided by FOIA, and require[s] that they be processed 'as soon as practicable.'"  *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 259–60 (D.D.C. 2005).  Since the EPA has already stated that Landmark's request is "at the top of the FOIA processing queue" and that it intends to process the request on or before January 31, 2013, the Court questions whether an order compelling expedited processing would afford any additional relief to Landmark.  *See* Def.'s Opp'n 4 (citing Wachter Decl. ¶ 11).[6]

However, because courts have equitable powers to order agencies to act within a particular time frame, for example, by December 24, and because a formal grant of "expedited processing" might ensure that the EPA keeps Landmark at the top of the queue, the Court will analyze Landmark's claim on the merits.

---

[6] The Court does not suggest that the entire FOIA suit is moot given that Landmark may still challenge the adequacy of the EPA's search, its invocation of any exemptions, etc.

### a.      Expedited Processing "Compelling Need" Standard

To obtain expedited processing, Landmark must show a "compelling need." 5 U.S.C. § 552(a)(6)(E)(i).  Such a need is established if either:  (1) failure to obtain expedited processing would pose an "imminent threat to the life or physical safety of an individual"; or (2) the requester is "primarily engaged in disseminating information" *and* shows an "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(ii); *see also* 6 C.F.R. § 5.5(d)(1)(ii).  Only the second category is at issue here.

The FOIA expedited processing provision was added in 1996 by the Electronic Freedom of Information Act Amendments, Pub. L. 104-231, § 8, 110 Stat. 3048, 3051–52.  The D.C. Circuit, in examining the legislative history of these amendments, has noted that "'the specified categories for compelling need are intended to be narrowly applied.'" *Al-Fayed v. CIA*, 254 F.3d 300, 310 (D.C. Cir. 2001) (quoting H.R. Rep. No. 104-795, at 26 (1996)).  The Circuit reiterated Congress' concern for agencies' "'finite resources'" and the possibility that overuse of the expedited process would unfairly disadvantage other requesters.  *Id.*

### i.      Landmark Has Not Shown it is a "Person Primarily Engaged in Disseminating Information"

Scant caselaw defines who qualifies as a person primarily engaged in information dissemination.  Courts regularly find that reporters and members of the media qualify, and EPA regulations implicitly assume they meet the definition.  *See* 40 C.F.R. § 2.104(e)(3).  However, given Congressional and D.C. Circuit direction that the category be narrowly construed, this Court must be cautious in deeming non-media organizations as persons primarily engaged in information dissemination.[7]  As noted in the legislative history, the category

---

[7] This is particularly the case at the preliminary injunction stage where the movant has the burden of showing a substantial likelihood of success on the merits and where the sought-after remedy is to be granted "sparingly."

should not include individuals who are engaged only *incidentally* in the dissemination of information. The standard of 'primarily engaged' requires that information dissemination be the *main activity* of the requestor, although it need not be their sole occupation. A requestor who only *incidentally* engages in information dissemination . . . would not satisfy this requirement.

H. R. Rep. No. 104-795, at 26 (emphasis added).

For this reason, at least one court denied expedited processing to another group engaged in both litigation and information dissemination. In *Am. Civil Liberties Union of N. Cal. v. Dep't of Justice*, the court refused to hold that the ACLU was engaged *primarily* in information dissemination despite the fact that it sent a bi-monthly newsletter to 40,000 people, maintained a website, and issued right-to-know documents, press releases, brochures, and pamphlets on civil liberties. No. 04-4447 PJH, 2005 WL 588354 (N.D. Cal. Mar. 11, 2005) ("[I]nformation dissemination must be *the* main activity of the requester-though it need not be his/her/its sole occupation. . . . [W]hile dissemination of information may be *a* main activity of ACLU-NC, there is no showing that it is *the* main activity.").

While this Court has found at least one non-media entity to be "primarily engaged" in information dissemination, that case is distinguishable. In *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005), the Court found that plaintiff's "mission [was] to serve as the site of record for relevant and up-to-the minute civil rights news and information." Here, Landmark has only stated that "*as part of* its mission as a tax-exempt, public interest law firm, Landmark *investigates, litigates*, and publicizes instances of improper and/or illegal government activity" and that "[*a*]*mong* [its] primary activities is to disseminate to the public about the conduct of governmental agencies." Letter information obtained through the [FOIA]." Pl.'s FOIA Request 7–8; *see also* Hutchison Aff. ¶¶ 4–5. This is not sufficient to show that Landmark is primarily, and not just incidentally, engaged in information dissemination and thus the Court cannot now find that Landmark meets this prong of the compelling need test.

A contrary reading of the statutory requirement would allow nearly any organization with a website, newsletter, or other information distribution channel to qualify as primarily engaged in disseminating information.

### ii.    Urgency to Inform

Because Landmark is not an entity primarily engaged in disseminating information, it cannot show a compelling need.   However, even if Landmark were to demonstrate that it is "primarily engaged in disseminating information," the Court is not convinced that Landmark can show an "urgency to inform."

In evaluating whether there is an urgency to inform, courts consider at least three factors: "(1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity." *Al-Fayed*, 254 F.3d at 310.   "The public's right to know, although a significant and important value, would not by itself be sufficient to satisfy this standard." *Id.* (quoting H.R. Rep. No. 104-795, at 26 (1996)).

First, as already stated, the Court reviews de novo an agency's denial of expedited processing.  By statute, judicial review is based on the record before the agency *at the time of* the determination.  At the time of the EPA's denial of Landmark's request, Landmark argued that the urgency to inform arose from the fact that the records related to matters of tremendous public interest, that the "health and wellbeing of the public and economic wellbeing of the country are at stake with improper environmental regulation," and that the EPA's potential delay in rulemaking should be considered by the American public before voting in the elections. Landmark's first justifications (that the matters are of public interest and concern the health and economic wellbeing of the public) are not sufficient to satisfy the standard.   The interest in

disclosing information before the presidential election comes much closer to meeting the urgency requirement.  However, given the breadth of issues at play in a presidential election, such a justification would likely sweep almost any FOIA request into the ambit of "urgency" since FOIA requests are regularly designed to elicit information about how the government is performing its work.  Thus, although the Court need not decide the issue, the Court doubts that such an argument meets the urgency standard.

In its preliminary injunction motion, Landmark raises new justifications, based on the November 2012 proposed rule, to support the urgency of its request.  Landmark could not have raised these justifications with the agency before issuance of the rule.  Because the FOIA statute only allows judicial review of agency decisions based on the record before the agency, these justifications are likely irrelevant for purposes of de novo review.  Nevertheless, because FOIA does not limit a Court's equitable powers, the Court will now consider Landmark's arguments.

Landmark's request for records related to delay of the agency rule certainly comes closest to meeting the urgency standard.  The proposed rule has a comment period ending before Landmark is set to receive a response to its FOIA request.  However, Landmark has not shown *why* this creates the level of exigency needed to demonstrate "urgency to inform."  For example, Landmark states that a "delay in producing responsive records could affect legal challenges to finalized regulations."  Pl.'s Stmt. P. & A. 6.  However, Landmark does not explain why this would be the case.  For example, Landmark does not state whether any legal challenges are contemplated.  Moreover, it is unclear how a delay of just over one month will impair Landmark's ability to launch any future legal challenges to finalized regulations.

It is true that the content of Landmark's comments in response to the EPA proposed rule *may* be affected by a delay in receipt of FOIA materials.  However, Landmark states that it seeks

information regarding politically motivated delays in publishing the rule.  Thus, the failure to obtain this information should not impact Landmark's ability to comment on the substance of the rule and the merits of any proposed changed.  Moreover, nothing prevents Landmark from filing comments (citing already-public information) expressing concern that the delay in issuance of the rule may have been politically motivated.

Given the foregoing, the Court finds that Landmark has not shown a substantial likelihood of success on the merits.  First, Landmark has likely already received the relief it seeks given that the agency has placed its request first in line.

### 2.    *Irreparable Injury*

Landmark has not shown that it will suffer irreparable injury if the Court does not order the release of records before December 24, 2012.

Courts in this circuit have acknowledged that "FOIA was created to foster public awareness, and failure to process FOIA requests in a timely fashion is 'tantamount to denial.'" *See, e.g.*, *Wash. Post*, 459 F. Supp. 2d at 74 (quoting H.R. Rep. No. 93-876, at 6 (1974)); *see also Payne Enters. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) (recognizing that "stale information is of little value").  However, where the plaintiff has not met the requirements for expedited processing, and where the agency has stated that it will complete processing of the request by the end of next month, the Court finds it difficult to conclude that denial of a preliminary injunction motion will result in irreparable harm.

If the EPA did, for political reasons, delay a controversial proposed rule until after the presidential election, the Court fails to see how receiving this information in January will irreparably harm Landmark.  Landmark could at that time choose to publicize the information in whatever forum it choose and could launch legal challenges, if applicable, to the rule itself.

Landmark may also still submit public comments to the proposed rule. While the Court acknowledges that its comments will not include information it might receive from the FOIA request, the Court is not convinced that this would result in irreparable harm. This is especially true given that, *even if* the Court were to order production of records, many of these could fall under exemptions to the FOIA and thus be withheld or redacted. Agencies may invoke one of nine FOIA exemptions to withhold information from disclosure. These exemptions are to be narrowly construed and agencies must release any non-exempt, segregable information and have the burden to justify withholding. Nevertheless, there is no guarantee, even if the Court were to issue a preliminary injunction that the records Landmark seeks would be disclosed. For example, after a preliminary review of documents already collected, the EPA noted that portions of the collected records may be subject to FOIA exemptions and must be identified, further reviewed, and redacted where appropriate. *See* Wachter Decl. ¶ 12.

### 3.   *No Substantial Injury to Other Interested Parties*

Landmark fares best on this prong of the preliminary injunction analysis. However, this is insufficient to overcome its failure on the other prongs. Here, the EPA argues that the search for and production of responsive records will be extremely difficult within the allocated time, for example, because of other court-imposed deadlines. Wachter Decl. ¶ 14. It will also divert resources from other statutory and regulatory obligations. Finally, the EPA suggests that a rushed production could result in the "inadvertent and improper disclosure of potentially sensitive attorney–client communications and deliberative information." Def.'s Opp'n 19.

The Court agrees that the administrative burden on the agency to complete this request in just three days (including two weekend days) would be significant. The Court is not convinced,

however, that this constitutes a "substantial injury" for purposes of a preliminary injunction analysis, particularly when the agency is already bound to respond to the request.

Again, however, the lack of a substantial injury on this prong does not overcome Landmark's failure to demonstrate that it is substantially likely to succeed on the merits and that it will suffer irreparable injury without an injunction.

### 4.      *Furthering of Public Interest*

The public interest clearly favors agency processing of FOIA requests as quickly as possible.  However, the question here is the extent to which the public interest is furthered by ordering the release of information within the next three days in the case of the November 2012 proposed rule request and requiring "expedited processing" for the remainder of Landmark's request.

The EPA has already stated that Landmark's request is "at the top of the FOIA processing queue," and that it "anticipates completing the response to this request on or before January 31, 2012."  Def.'s Opp'n 4 (citing Wachter Decl. ¶ 11, Hutchison Aff. ¶ 7).  Landmark has not shown that any increased public interest in disclosure of these documents within the next three days is significant enough to overcome its failure on the other prongs.

### B.      Preliminary Injunction Compelling Preservation of Responsive Information

### 1.      Landmark Has Not Shown Likelihood of Success on Merits

This Court sanctioned the EPA in 2003 for destroying records potentially responsive to a FOIA request by Landmark.  However, that case does not demonstrate the need for an order compelling preservation of records here.

First, there is no indication that the EPA has or will destroy any records related to this request.  The 2003 sanctions were levied when the agency, during the 2000–2001 change in

Presidential administrations, destroyed records in direct contravention of a court order.  Here, while there may be some staff turnover at the EPA as the Obama administration enters its second term, there will be no actual change in Presidential administrations.  What's more, in contrast to any indication of destruction of records, the EPA has already indicated that it has begun the process of collecting records and that it has already collected approximately 1,600 pages of responsive records.[8]  Wachter Decl. ¶ 11.

Second, the mere "potential of destruction" is not sufficient to demonstrate the need for such an order.  Such a possibility for destruction of records exists with regard to any FOIA request, yet courts do not routinely issue orders compelling preservation.

Third, the EPA is already barred from destroying many records which would be responsive, for example, under the Federal Records Act.

Finally, the EPA "has taken affirmative steps to preserve information responsive to the request, including issuance of a litigation hold."  Opp'n 18; Wachter Decl. ¶ 15.  The individual overseeing the EPA response to this request has stated that he "will comply to the best of [his] ability with the EPA's obligation to preserve information relevant to this FOIA litigation" and that his staff has been instructed to comply with preservation obligations.  Wachter Decl. ¶ 15.

Thus, there seems little likelihood for the need of an order compelling preservation.  In its Reply, Landmark raises a new concern, namely that news reports suggest that the EPA Office of Inspector General is investigating records management practices at the EPA and the EPA Administrator's use of an "alias" email address at the EPA.  Pl.'s Reply 1–2, ECF No. 17.  While this raises some potential concerns, the Court cannot base a decision to compel preservation on a

---

[8] It is unclear if the EPA suggests that there are 1600 pages of responsive documents or "potentially" responsive documents.  After stating that they have collected 1600 pages of responsive documents, Mr. Wachter states that a preliminary review suggests that many of the documents contain peripheral references to rules or rulemaking, but are ultimately nonresponsive to Plaintiff's request.  Wachter Decl. ¶ 12.

single news article.  However, the Court notes that as developments occur, it may reconsider the necessity of an order compelling preservation of records.

### 2.      Irreparable Injury

While Landmark would be irreparably harmed by the destruction of responsive records, as already discussed, there is no indication that the EPA will destroy responsive records.  Thus Landmark has not shown that it will suffer irreparable harm from the Court's refusal to enter a preliminary injunction.

### 3.      Substantial Injury to Other Interested Parties

There would be no substantial injury to other interested parties from an order compelling the preservation of documents.   However, because Landmark has not met the first two preliminary injunction factors, its success on the third has little impact.

### 4.      Furthering of Public Interest

Again, were there a danger that the EPA might destroy responsive records, the public interest would certainly be furthered by an order compelling preservation.  However, Landmark has not shown any indication that the EPA may destroy records.   Moreover, the EPA has submitted a sworn declaration from the employee overseeing the response to this FOIA request in which he states that there is a litigation hold requiring the preservation of records and that he will comply, to the best of his ability, with the obligation to preserve records.   Moreover, his staff has been instructed to comply as well.

## III.    CONCLUSION

For the reasons outlined above, the Court finds that Landmark has not met its burden to show that a preliminary injunction is needed.  Specifically, it has not shown that it is likely to succeed on the merits in demonstrating that it meets the compelling need standard for expedited

processing of its FOIA requests.  Moreover, it has not shown that it will suffer irreparable harm from a denial of a preliminary injunction to order production on these requests or that the public interest will be significantly furthered by release of the requested information in three days rather than next month.  Landmark also has not shown that the Court should issue an order compelling the EPA to preserve any responsive records.  The EPA has already begun to respond to this request, has submitted a sworn statement attesting that it will preserve records, and has shown no indication that it might destroy any responsive records.  The Court may revisit this issue as events require, but will not grant such a motion today.

Signed by Royce C. Lamberth, Chief Judge, on December 21, 2012.