**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| LANDMARK LEGAL FOUNDATION,           )<br>                                                                )<br>              Plaintiff,                                    )<br>                                                                )<br>       v.                                                      )       Civil Case No. 12-1726<br>                                                                )<br>ENVIRONMENTAL PROTECTION   )<br>AGENCY,                                                )<br>                                                                )<br>              Defendant.                                )<br>                                                                ) | |

## MEMORANDUM OPINION

The Environmental Protection Agency ("EPA") has moved for summary judgment as to the Landmark Legal Foundation's ("Landmark") Freedom of Information Act ("FOIA") claim. *See* Def.'s Mot., ECF No. 30.  Landmark opposes the motion and seeks limited discovery regarding the adequacy of EPA's search for documents responsive to its FOIA request.  The Court will deny EPA's motion, and will grant Landmark's request for limited discovery.

**I.     BACKGROUND[1]**

   **A. Landmark's FOIA Request**

"On August 17, 2012, Landmark, a 'national public interest law firm,' submitted a FOIA request to the EPA requesting records regarding any EPA rule or regulation for which public notice has not been made, but which was contemplated or under consideration for public notice between January 1, 2012 and August 17, 2012." *Landmark Legal Found. v. EPA*, 910 F. Supp. 2d 270, 272 (D.D.C. 2012) (citations omitted).  Specifically, Landmark asked EPA to disclose

---

[1] Additional background for this case is provided in this Court's previous opinion, *Landmark Legal Found. v. EPA*, 910 F. Supp. 2d 270, 272-74 (D.D.C. 2012).

1. Any and all records identifying the names of individual, groups and/or organizations outside the EPA with which the EPA, EPA employees, EPA contractors and/or EPA consultants have had communications of any kind relating to all proposed rules or regulations that have not been finalized by the EPA between January 1, 2012 and August 17, 2012. . . .

2. Any and all records indicating an order, direction or suggestion that the issuance of regulations, the announcements of regulations and/or public comment of regulations should be slowed or delayed until after November 2012 or the presidential elections of 2012.

Letter from Mark R. Levin, President, Landmark Legal Found., to Nat'l Freedom of Info. Officer, U.S. Envtl. Prot. Agency 2 [hereinafter "Pl.'s FOIA Request"], Aug. 17, 2012, Def.'s Ex. A, ECF No. 30-2. "The genesis of the FOIA request was Landmark's suspicion, based on news reports, that the EPA may have intentionally delayed a 'controversial' regulation until after the November 2012 presidential election." *Landmark Legal Found.*, 910 F. Supp. 2d at 272–73. This concern appears on the face of Landmark's FOIA request, which asserts the possibility that "the Obama Administration is improperly politicizing EPA activities, EPA officials are attempting to shield their true policy goals from the public, and/or EPA officials themselves are putting partisan interests above the public welfare." Pl.'s FOIA Request 1.

### B. Landmark's Agreement To Narrow the Scope of the Request

Following some discussion between the parties,[2] the EPA's Office of the Executive Secretariat[3] sent an email to Landmark's Assistant General Counsel which included the following query: "In order to make this request more manageable, would you consider narrowing

---

[2] Landmark's Assistant General Counsel, Matthew Forys, states that, prior to the e-mail exchange detailed in the text above, he "received a telephone call from . . . Jonathan V. Newton . . . from the EPA's Office of the Executive Secretariat" who "wanted to discuss [the] FOIA request because the EPA believed it was overly broad." Decl. Matthew Forys ¶ 3, ECF No. 31-1. During the conversation, Mr. Forys states that he told Mr. Newton that "generally Landmark was interested in outside pressure on the EPA from the White House or other agency to delay regulations." *Id.* Mr. Forys also details an additional phone conversation that preceded the e-mail exchange. *Id.* ¶ 4. Eric E. Wachter, director of the EPA's Office of the Executive Secretariat confirms that at least one such conversation occurred. Wachter Decl. ¶¶ 8-9.

[3] The Office of the Executive Secretariat processes FOIA requests for the Office of the Administrator and coordinates many requests for the entire agency. Wachter Decl. ¶¶ 2-3.

the search to senior officials in EPA HQ (ie., Program Administrators, Deputy Administrators and Chiefs of Staff)?" Email from Jonathan Newton (EPA) to Matthew C. Forys (Landmark), Oct. 5, 2012, Pl.'s Ex. A, ECF No. 31-1. Landmark's response stated that it "will agree to limit the scope of the search to senior officials in EPA HQ with the understanding that Landmark does not waive the right to expand the scope to the original request if warranted by responsive records." Email from Matthew C. Forys (Landmark) to Jonathan Newton (EPA), Oct. 5, 2012, Pl.'s Ex. A, ECF No. 31-1.

EPA appears to be inconsistent as to whether it understood the term "senior officials" in this narrowing agreement to exclude the Administrator and/or other top leaders in the agency from the scope of the FOIA request. EPA's opening brief asserts that both parties "agreed to narrow the scope of the request to 'senior officials' in each of the EPA's headquarters offices, with 'senior officials' being identified as Program Administrators, Deputy Administrators and Chiefs of Staff in EPA's headquarters offices as well as the Associate Administrator and Deputy Associate Administrator in EPA's Office of Policy." Def.'s Mem. 4–5. This statement seems to suggest that the EPA interpreted the FOIA request as excluding the Administrator. The initial declaration of Eric Wachter, the director of the EPA's Office of the Executive Secretariat, seems to confirm this interpretation. Wachter Decl. ¶¶ 9 & 11, ECF No. 30-1 ("This request was narrowed by agreement . . . to assistant administrators, deputy assistant administrators, and chiefs of staff in EPA headquarters offices, as well as to the associate administrator and deputy associate administrator in EPA's Office of Policy."). But in subsequent filings, EPA states that it "does *not* assert that Landmark agreed to limit the scope of the FOIA request to assistant administrators, deputy assistant administrators, and chiefs of staff in EPA headquarters offices as well as to the associate administrator and deputy associate administrator in EPA's Office of

Policy," Def.'s Reply to Pl.'s Statement of Material Facts ¶ 1, ECF No. 35, and that it "has *always* interpreted the narrowed scope of the request to include the Administrator, Deputy Administrator, and Chief of Staff in the Office of the Administrator." Def.'s Reply 4. A parallel adjustment is also found in Mr. Wachter's supplemental declaration, which states that his office "interpreted the narrowed scope of this FOIA request to include the Administrator, Deputy Administrator, and Chief of Staff in the Office of the Administrator," who were "included under the definition of 'program administrators, deputy administrators, and Chiefs of Staff.'" Wachter Supp. Decl. ¶ 9, ECF No. 35-7.

### C. EPA's Initial and "Final" Disclosures

Between February and April of 2013, EPA conducted a search for responsive documents and made disclosures to Landmark, culminating in a "final" disclosure on April 12, 2013. Def.'s Statement of Material Facts ¶ 15, ECF No. 30. This final disclosure included 1,134 pages in 123 documents released in full, 1,678 pages in 196 documents with redactions, and an index of documents withheld under FOIA exemptions. *Id.* ¶ 15.

Again, EPA appears to be inconsistent as to when and how the FOIA request was communicated to the Office of the Administrator, and provides limited details of what was actually communicated. In his initial declaration, Mr. Wachter explains that his "office initiated a search for records, as narrowed by agreement . . . by electronic mail" and that this "initial search request went to the Office of the Administrator" on October 23, 2012. Wachter Decl. ¶ 11; *see also* Def.'s Mem. 5. Mr. Wachter's initial declaration states that this initial request for records was sent to the designated FOIA coordinators for "each of the EPA's headquarters offices," including the Office of the Administrator. *Id.* at 12. The email included the following: "**Note: This request has been modified.** The search only applies to assistant administrators,

deputy assistant administrators and chiefs of staff in EPA headquarters." *Id.* (emphases in original). This instruction appears to indicate that the Administrator and Deputy Administrator were outside of the scope of the request.

However, in a subsequent filing, the EPA states that this October 23 email was "*not* sent to the office of the Administrator," Def.'s Reply 6 (emphasis added); *see also* Wachter Supp. Decl. ¶ 15, explaining that "the individual . . . who was responsible for sending the email was also the designated FOIA Coordinator for the Office of the Administrator and is responsible for coordinating searches for responsive records from [that office]." Def.'s Reply 6. As Mr. Wachter explains in his supplemental declaration, this individual, Mr. Newton, "communicated with staff in the Office of the Administrator regarding this FOIA request *through a separate email communication*." Wachter Supp. Decl. ¶ 15 (emphasis added); *see also* Def.'s Reply 6–7. On November 14, several weeks after Mr. Newton sent the initial email to the FOIA coordinators in other offices, he "sent an email to Aaron Dickerson and Nena Shaw in the Office of the Administrator, forwarding the instructions that were sent to the FOIA coordinators for the other program offices on October 23, 2012 . . . ." Wachter Supp. Decl. ¶ 17; *see also* Def.'s Reply 7. Mr. Wachter also states that the email instructed the recipients to "search for records responsive to the request from the email accounts of the Administrator and Deputy Administrator, respectively . . . ." Wachter Supp. Decl. ¶ 17. EPA does not provide this email, and does not provide any further details regarding the content of the November 14 message.

### D. EPA's Supplemental Search and Disclosures

Shortly after making this "final" disclosure, EPA apparently "determined that an additional search for documents from the former Administrator, Deputy Administrator, and Chief of Staff in the Office of the Administrator would be necessary to ensure a complete and

adequate production to Plaintiff." Def.'s Statement ¶ 16. EPA explains this determination in vague terms: "In the course of finalizing the materials for the Motion for Summary Judgment, it was determined that the search for documents from the former Administrator, the Deputy Administrator, and the Chief of Staff in the Office of the Administrator may have been insufficient." Def.'s Mem. 7. Mr. Wachter's declaration explains the reversal in similarly vague terms: "In the course of finalizing the materials for [the summary judgment motion] my office determined that the search for documents from the former Administrator, the Deputy Administrator, and the Chief of Staff in the Office of the Administrator *may have been insufficient*." Wachter Decl. ¶ 19 (emphasis added).

As a result of this additional search, on May 15, 2013, EPA disclosed 800 additional pages in 101 additional documents in full, and roughly 1,400 additional pages in 181 additional documents with redactions. Def.'s Statement ¶¶ 16–17. As Landmark notes, these newly disclosed records "essentially doubled the number of records responsive to [the FOIA] request." Pl.'s Opp'n 7.

### E.  Non-Search of EPA Leaders' *Personal* Email Accounts

Disclosed documents include emails sent between EPA accounts, including both the primary and secondary accounts of the former Administrator,[4] as well as emails between EPA

---

[4] EPA explains the use of "primary" and "secondary" email accounts:

> Because the widespread use of email has become commonplace, EPA Administrators have been assigned two email accounts: a primary account and a secondary account. The email address for Administrator Jackson's primary account was posted on EPA's website and was used by hundreds of thousands of Americans to send messages to the Administrator. This account was maintained and monitored by staff, and the emails were processed as official correspondence as appropriate. The secondary account was an everyday, working email account of the Administrator to communicate with staff and other government officials. This secondary email account was used for practical purposes. Given the large volume of emails sent to the primary account—more than 1.5 million in fiscal year 2012, for instance—the secondary email account was necessary for effective management and communication between the Administrator and colleagues.

accounts and outside accounts, but not emails between the personal accounts of EPA leaders and non-EPA accounts. *See* Def.'s Reply 9–12.

## II.   LEGAL STANDARD

### A. Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

### B.  The FOIA

The FOIA, 5 U.S.C. § 552, requires federal agencies to make certain records publicly available. The FOIA also provides exemptions from the disclosure requirement which are to be "narrowly construed." *FBI v. Abramson*, 456 U.S. 615, 630 (1982). FOIA actions are typically and appropriately resolved on summary judgment. *See Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

### C.  Adequacy of Search Under the FOIA

To prevail on summary judgment in a FOIA action, a defending agency "must show beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007). "The question is not whether there might exist any other documents possibly responsive to the request, but rather

---

. . . [T]he EPA searched this secondary account and provided responsive records from this secondary account. [The Office of the Executive Secretariat] is aware of no other secondary EPA email accounts of senior officials within the Agency during the time period of Plaintiff's request.

Def.'s Reply 11. There was initially some dispute regarding the redaction of the secondary email address, but this dispute was resolved when the EPA removed the redactions as part of their April 12, 2013 production. Def.'s Mem. 15. EPA explains that "Administrator Jackson's departure from the Agency obviated the need to withhold the name on her secondary email account." *Id.*

The "secondary" email accounts issue is distinct from Landmark's allegations regarding the use of private email accounts.

whether the search for those documents was adequate." *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (internal quotations and citations omitted). "The court applies a reasonableness test to determine the adequacy of a search methodology, consistent with congressional intent tilting the scale in favor of disclosure." *Morley*, 508 F.3d at 1114 (internal quotations and citations omitted). This "reasonableness" inquiry is necessarily "dependent upon the circumstances of the case." *Davis v. Dep't of Justice*, 460 F.3d 92, 103 (D.C. Cir. 2006) (internal quotations and citations omitted).

The agency has the initial burden to demonstrate the adequacy of its search, which it may meet by providing declarations or affidavits that are "relatively detailed[,] . . . nonconclusory and submitted in good faith." *Weisberg v. Dep't of Justice,* 705 F.2d 1344, 1351 (D.C. Cir. 1983) (internal quotations and citations omitted). These declarations are "accorded a presumption of good faith which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Negley v. FBI*, 169 F. App'x 591, 594 (D.C. Cir. 2006) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). Summary judgment is improper where "agency affidavits . . . do not provide information specific enough to enable [the requester] to challenge the procedures utilized." *Weisberg*, 627 F.2d at 371.

### III. ANALYSIS

#### A. Genuine Issues of Material Fact Regarding the Adequacy of EPA's Search Preclude Summary Judgment

Landmark argues that there are numerous outstanding issues of material fact precluding summary judgment as to the adequacy of EPA's search for records responsive to its FOIA request. The Court finds that two issues require factual development before it could find an adequate search has been conducted.

1. **Exclusion of Possibly Relevant Personal Emails**

EPA did not search the *personal* email accounts of the Administrator, the Deputy Administrator, or the Chief of Staff. Landmark points to one disclosed record—an email originating from the personal email account of then-Deputy Administrator Robert Perciasepe—as evidence that upper-level EPA officials conducted official business from their personal email accounts.[5] Pl.'s Opp'n 17. Landmark also points to several press reports and a Congressional Investigation into whether EPA officials "regularly use private communication accounts to conduct official government business" "reportedly in part to avoid FOIA obligations." Pl.'s Opp'n 18.

Landmark raised this issue with EPA in a meeting on March 21, 2013, Pl.'s Opp'n 17–18, emphasized it again in their opposition brief, *id.*, and again in the Surreply, Pl.'s Surreply 4, ECF No. 36-1. EPA never addresses Landmark's allegation that official business was being conducted from the personal email accounts. Instead, it states only that it "searched for and produced responsive documents from outside parties and accounts *that were in its possession and control.*" *See* Def.'s Reply 13.

Landmark's allegations regarding the "existence and discoverability of other documents" are not "purely speculative," and are therefore sufficient to rebut the presumption of good faith that attaches to the agency's declarations. *See Negley*, 169 F. App'x at 594 (quoting *SafeCard*, 926 F.2d at 1200). The allegations are supported by one concrete example of a personal email being used for official purposes, and made against the background of several similar allegations raised in the media and by Congress. In response, EPA's silence speaks volumes; its failure to deny the allegations that personal accounts were being used to conduct official business leaves

---

[5] The email was sent from Mr. Perciasepe's personal email account to an official EPA account.

open the possibility that they were.  Because any search in response to Landmark's request that left out these possibly key sources would not be "reasonably calculated to uncover all relevant documents," *Morley*, 508 F.3d at 1114, the Court finds that there is an outstanding issue of material fact precluding summary judgment as to the adequacy of the EPA's search.

### 2.  Possible Deliberate Exclusion of the Administrator

The factual record before the Court also admits the possibility that the agency initially sought to exclude the Administrator and/or others from the FOIA request.  The record before the Court provides a murky picture of how and when the FOIA request was communicated to the Office of the Administrator.  On the eve of filing a summary judgment motion, weeks after issuing its purportedly "final" disclosures in this matter, EPA apparently determined that these disclosures were inadequate, and subsequently disclosed additional records from the Administrator, her deputy, and her chief of staff, which had not previously been searched, and which roughly doubled the volume of total disclosures.  Def.'s Statement ¶ 16.  EPA provides no explanation for this error, how it was caught, or by whom, much less any description of what led to the error in the first instance.

One explanation, suggested by Landmark, is that the EPA initially interpreted Landmark's FOIA request as excluding the Administrator and possibly also the Deputy Administrator and/or the Chief of Staff.  Between its opening brief and its reply in this motion, EPA appears to have changed its story both as to whether it initially interpreted Landmark's request in this fashion, *compare* Def.'s Mem. 4–5, *and* Wachter Decl. ¶¶ 9 & 11, *with* Def.'s Reply to Pl.'s Statement of Material Facts ¶ 1, Def.'s Reply 4, *and* Wachter Supp. Decl. ¶ 9, as well as to the nature and timing of its initial communication of the FOIA request to the Administrator's staff, *Compare* Def.'s Mem. 5, *and* Wachter Decl. ¶ 11, *with* Def.'s Reply 6, *and*

Wachter Supp. Decl. ¶ 15. Even in its revised account, EPA states that the later communication of the FOIA request to the Administrator's staff included the "instructions that were sent to the FOIA coordinators for the other program offices on October 23, 2012 . . . " Wachter Supp. Decl. ¶ 17, which the EPA has separately explained included instructions excluding the Administrator and the Deputy Administrator.  *See* Wachter Decl. ¶ 12 (quoting the following restrictive language from the email: "The search only applies to assistant administrators, deputy assistant administrators and chiefs of staff in EPA headquarters.").

The record leaves open the possibility that, one way or another, the agency engaged in bad faith conduct by excluding the top politically appointed leaders of the EPA from Landmark's FOIA request at least initially.  Landmark's Assistant General Counsel agreed to narrow the search to "*senior officials* in EPA HQ" in response to EPA's email which included the following parenthetical after that term "(ie., Program Administrators, Deputy Administrators and Chiefs of Staff)." *See* Emails between Jonathan Newton (EPA) and Matthew C. Forys (Landmark) (emphasis added). Even if there were some textual ambiguity in this exchange as to whether Landmark was thereby agreeing to exclude the Administrator from its FOIA request, the context of Landmark's FOIA request easily precludes such a reading. On the face of its FOIA request, Landmark explains that it is interested in learning whether "the Obama Administration is improperly politicizing EPA activities, EPA officials are attempting to shield their true policy goals from the public, and/or EPA officials themselves are putting partisan interests above the public welfare." Pl.'s FOIA Request 1. Landmark also apparently raised similar points—regarding its interest in uncovering possible political manipulation of the agency in an election year—in a phone conversation with EPA that preceded and led to this email exchange. *See* Forys Decl. ¶¶ 3–4; *see also* Wachter Decl. ¶¶ 8–9. In this context, no reasonable interpreter

n/a

could read Landmark's email agreeing to narrow its request to "senior officials at EPA HQ" as an agreement to exclude the Administrator—the top political appointee in the agency.[6] The possibility that EPA engaged in such an apparently bad faith interpretation, raised by Landmark's allegations and supported by EPA's inconsistent filings, precludes this Court from entering summary judgment in their favor as to the adequacy of the search. Because the agency's briefings and affidavits "do not provide information specific enough to enable [the requester] to challenge the procedures utilized," summary judgment as to the adequacy of the search is not justified. *Weisberg*, 627 F.2d at 371.

### B. Limited Discovery is Warranted

Having found outstanding issues of material fact preventing summary judgment, the Court must now determine the proper resolution. Landmark asks the Court to "order EPA to submit to discovery in order to afford [it] the opportunity to determine the circumstances surrounding EPA's improper limitation of the scope of its search for responsive records—including whether EPA employees have acted in bad faith; and to determine the actual scope of EPA's search for responsive records." Pl.'s Opp'n 22; *see also id.* at 3 ("Landmark ought to be allowed discovery in order to determine the scope of EPA's record systems and the adequacy of EPA's fulfillment of its obligation to comply with its search obligations.").

"Discovery is the exception, not the rule, in FOIA cases." U.S. Dep't of Justice, Guide to the Freedom of Information Act 810 (2009 Ed.); *see also Thomas v. FDA,* 587 F. Supp. 2d 114, 115 (D.D.C. 2008) (Huvelle, J.) (noting that "discovery is an extraordinary procedure in a FOIA action"). "Discovery in FOIA is rare and should be denied where an agency's declarations are reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute remains." *Baker & Hostetler LLP v. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006)

---

[6] EPA all but concedes this point by apparently backing away from the argument.

(parenthetically quoting *Schrecker v. Dep't of Justice*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002)). Where an agency's declarations are insufficient to support a finding that its search was adequate, courts "generally will request that an agency supplement its supporting declarations rather than order discovery." *Wolf v. CIA*, 569 F. Supp. 2d 1, 10 (D.D.C. 2008) (Leon, J.) (internal citations and quotations omitted); *see e.g.*, *COMPTEL v. FCC*, 910 F. Supp. 2d 100, 114 (D.D.C. 2012) (Lamberth, C.J.) (finding agency declarations insufficient to demonstrate adequacy of the search, and requiring it to submit a "revised declaration which more fully describes its search").

"The major exception to this limited scope of discovery is when the plaintiff raises a sufficient question as to the agency's good faith in processing documents; in such instances, discovery has been permitted." U.S. Dep't of Justice, Guide to the Freedom of Information Act 812 (2009 Ed.) (collecting cases); *see, e.g., Citizens for Responsibility & Ethics in Washington v. Dep't of Justice,* 05-cv-2078, 2006 WL 1518964 (D.D.C. June 1, 2006) (Sullivan, J.) (finding discovery warranted in a FOIA action where the government had engaged in extreme delay); *but see Safecard,* 926 F.2d at 1200 (noting that affidavits submitted by an agency are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims"). For instance, "when there is evidence of some wrongdoing such as . . . a material conflict in agency affidavits, limited discovery has been allowed." *Citizens For Responsibility & Ethics in Washington v. Nat'l Indian Gaming Comm'n*, 467 F. Supp. 2d 40, 56 (D.D.C. 2006) (Collyer, J.) (citing *Long v. U.S. Dep't of Justice*, 10 F. Supp. 2d 205 (N.D.N.Y. 1998)).

In light of these principles, the Court finds that limited discovery is appropriate here. The two outstanding issues of fact precluding summary judgment both point to issues that may indicate bad faith on the part of the agency. The possibility that unsearched personal email accounts may have been used for official business raises the possibility that leaders in the EPA

may have purposefully attempted to skirt disclosure under the FOIA.[7] The possibility that the agency purposefully excluded the top leaders of the EPA from the search, at least initially, suggests an unreasonable and bad faith reading of Landmark's FOIA request and subsequent agreement to narrow its scope. Moreover, as reviewed above, the EPA's briefing and affidavits on the facts and circumstances surrounding the second point contain numerous inconsistencies and reversals which undermine confidence in their truthfulness.

Accordingly, Landmark shall conduct discovery which shall be limited to the following issues:

1) Whether and to what extent the EPA Administrator, Deputy Administrator, and/or Chief of Staff utilized personal email accounts to conduct official business during the relevant time period.

2) Whether the EPA initially excluded the Administrator, Deputy Administrator, and/or Chief of Staff from Landmark's FOIA request.[8]

---

[7] The Court takes note of the further possibility, raised by Landmark, of "the potential spoliation of records that should have been searched prior to [the former Administrator's] departure, particularly those records that may have been found on her personal electronic devices," which may or may not be out of EPA's reach now. Pl.'s Opp'n 16. The possibility of spoliation is not without precedent. The EPA itself was previously found in contempt of this Court for destruction of a previous Administrator's computer hard drive in violation of an order. *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 70 (D.D.C. 2003). Although the administrator was not personally liable, since no one had told her about the order, the agency was. *Id.*

[8] Landmark also argues that discovery is warranted to determine "whether sanctions pursuant to 5 U.S.C. 552(a)(4)(F) ought to be applied against any EPA employee." *Id.*

Subsection 552(a)(4)(F) of the FOIA creates an internal agency disciplinary system, triggered by the issuance of a "written finding" by courts, for agency personnel who act "arbitrarily or capriciously" in responding to a FOIA request. The subsection provides:

> Whenever the court orders the production of any agency records improperly withheld from the complainant and assesses against the United States reasonable attorney fees and other litigation costs, and issues a written finding that the circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously with respect to the withholding, the Special Counsel shall promptly initiate a proceeding to determine whether disciplinary action is warranted against the officer or employee who was primarily responsible for the withholding. The Special Counsel, after investigation and consideration of the evidence submitted, shall submit his findings and recommendations to the administrative authority of the agency concerned and shall send copies of the findings and recommendations to the officer or employee or his representative. The administrative authority shall take the corrective action that the Special Counsel recommends.

5 U.S.C. 552(a)(4)(F). As the provision makes clear, such "written findings" may only be issued after a court has both ordered the production of improperly withheld records and imposed attorneys' fees against the United States. Attorneys' fees may be awarded in FOIA actions where the complainant has "substantially prevailed" by obtaining

## IV.   CONCLUSION

EPA's motion for summary judgment is DENIED.  An Order shall issue with this opinion.

Signed by Royce C. Lamberth, U.S. District Judge, on August 14, 2013.

---

relief through either "a judicial order, or an enforceable written agreement or consent decree" or "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 552(a)(4)(E).

Because the Court finds that discovery is warranted to address the adequacy of the search along the two fronts listed above, it need not address whether discovery is separately warranted to pursue the possibility that an EPA agent acted "arbitrarily or capriciously" under 552(a)(4)(F).  It leaves the question of whether to issue "written findings" pursuant to this section for another day when the factual record is more fully developed.