# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

LANDMARK LEGAL FOUNDATION

Plaintiff,

vs.

ENVIRONMENTAL PROTECTION AGENCY,

Defendant.

**Case No. 1:12-cv-01726 (RCL)**

## PLAINTIFF LANDMARK LEGAL FOUNDATION'S MOTION FOR SPOLIATION SANCTIONS

Plaintiff Landmark Legal Foundation ("Landmark" or "Plaintiff"), pursuant to Fed.R.Civ.P. 37, respectfully moves for sanctions.[1]  Landmark moves that this Court:

1.      Enter an Order finding that Defendant Environmental Protection Agency ("EPA," "Defendant," or "Agency") has engaged in spoliation of Agency documents and document-containing repositories;

2.      Award Plaintiff its reasonable attorney's fees and costs incurred in this litigation;

3.      Designate an independent monitor, reporting to this Court and Plaintiff, to be paid by EPA, to assure that neither Landmark nor any other person be denied their rights to the preservation of agency records in litigation and to direct the prompt collection of all responsive documents under the FOIA request pursuant to the agreed-upon new search protocol;

---

[1] Pursuant to Local Rule 7(m), counsel for Plaintiff consulted with counsel for Defendant Environmental Protection Agency ("EPA").  Counsel for EPA informed counsel for Plaintiff that EPA does not consent to this Motion.

4.      Command EPA to employ whatever resources are necessary to complete its search and production obligations under the new search protocol within 30 days;

5.      Direct EPA's Inspector General to investigate and report to Landmark and this Court within 30 days on all spoliation issues involving each and every senior official covered by Landmark's FOIA request;

6.      Direct that EPA review its docket from 2009 to the present and send a notice to all plaintiffs and petitioners of the findings of this Court and of the real possibility that EPA engaged in spoliation in their proceedings;

7.      Enter such other relief this Court deems necessary and proper in the circumstances, including the awarding to Plaintiff of monies in the form of a fine sufficient to deter EPA from committing serial misconduct in the future.


                                        Respectfully submitted,

July 24, 2014                           Landmark Legal Foundation


Arthur F. Fergenson                     s/ Michael J. O'Neill
Ansa Assuncao                           Michael J. O'Neill #478669
3545 Ellicott Mills Dr.                 Mark R. Levin
Suite 201                               Matthew C. Forys
Ellicott City, MD 21043                 Landmark Legal Foundation
410-203-1247                            19415 Deerfield Ave
Arthur.Fergenson@ansalaw.com            Suite 312
                                        Leesburg, VA 20176
                                        703-554-6100
                                        703-554-6119 (facsimile)
                                        mike@landmarklegal.org

                                        Richard P. Hutchison
                                        Landmark Legal Foundation
                                        3100 Broadway, Suite 1210
                                        Kansas City, MO 64111

816-931-5559
816-931-1115 (facsimile)
rpetehutch@aol.com

**CERTIFICATE OF SERVICE**

Undersigned counsel hereby certifies that a true and accurate copy of the foregoing

Motion for Sanctions (accompanied by Proposed Order and Memorandum of Points and

Authorities) was filed electronically with this Court by using the CM/ECF system on this 24th

Day of July, 2014.  Parties that are registered CM/ECF users will be served by the District

Court's CM/ECF system.


/s/ Michael J. O'Neill_____
Michael J. O'Neill
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

LANDMARK LEGAL FOUNDATION

Plaintiff,

vs.

ENVIRONMENTAL PROTECTION AGENCY,

Defendant.

**Case No. 1:12-cv-01726 (RCL)**

## PLAINTIFF LANDMARK LEGAL FOUNDATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SPOLIATION SANCTIONS

Plaintiff Landmark Legal Foundation ("Landmark" or "Plaintiff"), pursuant to

Fed.R.Civ.P. 37, respectfully submits this Memorandum of Points And Authorities In Support Of

Motion For Spoliation Sanctions.

> *[T]he EPA 'has taken affirmative steps to preserve information responsive to the request, including issuance of a litigation hold.' Opp'n 18; Wachter Decl. ¶ 15. The individual overseeing the EPA response to this request has stated that he 'will comply to the best of [his] ability with the EPA's obligation to preserve information relevant to this FOIA litigation' and that his staff has been instructed to comply with preservation obligations. Wachter Decl. ¶ 15. Thus, there seems little likelihood for the need of an order compelling preservation. . .. However, the Court notes that as developments occur, it may reconsider the necessity of an order compelling preservation of records.*

Memorandum Opinion, December 21, 2012.  (PACER Dkt. No. 19).

Defendant Environmental Protection Agency ("EPA," "Defendant," or "Agency") has

spoliated documents and repeatedly delayed in seeking to recover them even after pledging to do

so before this Court.  Because the purpose of this litigation is to compel production of these same

documents, spoliation defeats the very merits of this litigation and prevents Landmark from obtaining a full and fair search for and production of records. The spoliation also defeats a full and fair investigation of whether the search was adequate and the degree of culpability of EPA and its officials, an investigation set in motion by this Court's concern about shifting and inconsistent stories offered by EPA about the scope of its search.

The spoliation has continued during this lawsuit even after the failure to preserve documents was brought to light by Landmark's depositions of EPA officials. EPA has failed to recover text messages and refused to cooperate with Landmark to investigate the loss of text messages by other senior officials or to recover personal emails from other senior officials. EPA has ignored its own litigation hold memoranda defining each email as a separate document by doing nothing to preserve the personal email account of the Administrator. EPA has ignored its duty to this Court to investigate fully and report on its spoliation.

As this constitutes the second spoliation before this Court by this Defendant for FOIA searches by this Plaintiff, and because the failure in this case constitutes a gross disregard for its obligations to Landmark and this Court, Landmark seeks sanctions in the form of money paid to Landmark, and the appointment of an independent monitor, reporting to this Court and Plaintiff, to be paid by EPA, possessing the full authority of this Court to assure that neither Landmark nor any other person be denied their rights to the preservation of agency records in this litigation or any litigation. Finally, this Court may direct EPA to take all action necessary to advise all other litigants who may have been affected by its systemic spoliation of documents, including litigants in cases closed by settlement or otherwise. These litigants should have the opportunity to petition their courts for relief if appropriate. Injustice should not be rewarded.

## I.      INTRODUCTION

The Freedom of Information Act ("FOIA") request at issue sought records that would reveal whether or not EPA's senior officials were participating in the improper manipulation of the Agency's regulatory agenda in order to improve President Barack Obama's prospects in the 2012 general election.  Landmark expressed particular concern for responsive records from, and in the possession of, then-Administrator Lisa Jackson.  EPA has done everything in its power to avoid producing said records, going so far as to avoid the preservation of records potentially relevant to this litigation.  Despite its issuance of a litigation hold memorandum at the institution of this lawsuit, EPA has not taken any meaningful action to preserve records on the now-former Administrator's government BlackBerry or that resided on her personal computer or otherwise in her personal email account.

The EPA Administrator at the time of the FOIA request, during the time covered by the FOIA request, and at the commencement of this litigation is Lisa Jackson.[2]  Ms. Jackson testified that she texted with individuals in and out of the government.  Her government-issued BlackBerry (the device she utilized to communicate via text) was returned to EPA when she left office and has not, to Plaintiff's knowledge, been recovered.  EPA has not informed Landmark of the results of its repeatedly-delayed efforts to recover Ms. Jackson's text messages or, for that matter, any text messages of senior EPA officials subject to the FOIA search.  Ms. Jackson stated that she used her personal email to communicate with government officials and private parties on matters of concern to the Agency.  She deleted emails located in her personal email *en masse*. EPA undertook no effort to secure potentially responsive emails from the Administrator's personal email account, even though EPA states in its own litigation hold memorandum that

---

[2] Lisa Jackson served as Administrator for EPA from January 2009 through February 14, 2013.  Exhibit 1, Deposition of Lisa Jackson ("Jackson Dep.") at 12:19-20.

every email on a personal email account should be preserved even if it is forwarded to another account.  Each email is a separate document.  EPA ignored the law as it understood it.

Ms. Jackson testified that she tried to obtain the emails after she left EPA and when the House of Representatives initiated its investigation of her email practices.  She could not recover them.  These records are spoliated.  And because EPA explicitly required that they be maintained as of the date of its own litigation hold memorandum, the spoliation is negligent at best, and deliberate at worst.

Landmark has demanded that EPA conduct an investigation of spoliation of personal email accounts and text messages of all senior officials subject to the FOIA search.  EPA has responded with silence.

These documents are not only potentially relevant to the very merits of this lawsuit, they also go to the competence of the FOIA searches themselves, including the initial decision by EPA not to search either the Administrator's or the Deputy Administrator's records.

## II.    FACTUAL BACKGROUND

### A.  *Landmark's FOIA Request.*

In July 2012, major media outlets published news reports that EPA was intentionally delaying the issuance of controversial regulations until after the November election.  Pl.'s Complaint at ¶ 6 (PACER Dkt. No. 1).  Other news reports suggested that political observers "see a crass political calculation at play: Don't give Romney any more ammunition before the election – and then open the floodgates after the polls close."  Pl.'s Complaint at ¶ 8 (PACER Dkt. No. 1).

Troubled by the reports, Landmark, on August 17, 2012, submitted a FOIA request to

EPA seeking records of communications between EPA officials and individuals or organizations

outside of EPA relating to planned, but not yet finalized, rules or regulations:

> Any and all records identifying the names of individuals, groups and/or
> organizations outside the EPA with which the EPA, EPA employees, EPA
> contractors and/or EPA consultants have had communications of any kind relating
> to all proposed rules or regulations that have not been finalized by the EPA
> between January 1, 2012 and August 17, 2012.  For purposes of this request,
> "communications of any kind" does not include public comments or other records
> available on the rulemaking docket.
>
> Any and all records indicating an order, direction or suggestion that the issuance
> of regulations, the announcements of regulations and/or public comment of
> regulations should be slowed or delayed until after November 2012 or the
> presidential election of 2012.

Pl.'s Complaint at ¶ 10, Exhibit 1 (Landmark's Aug. 17, 2012 FOIA Request) (PACER Dkt. No.

1).

EPA acknowledged receipt of the request on August 29, 2012, and, at the same time,

granted Landmark's request for a fee waiver but denied expedited processing.  Pl.'s Complaint

Exhibit 2 (PACER Dkt. No. 1).  On September 14, 2012, Landmark appealed this denial.  Pl.'s

Complaint at ¶ 14 (PACER Dkt. No. 1).

On September 27, 2012, EPA requested that Landmark narrow the scope of its request.

See, Pl.'s Opp. To Def.'s Mot. For S.J. Matthew C. Forys Declaration at ¶ 4 (PACER Dkt. No.

31).  EPA claimed that Landmark's request could be read to apply to every EPA employee in

every EPA office throughout the country.  See, Pl.'s Opp. To Def.'s Mot. For S.J. Matthew C.

Forys Declaration at ¶ 3 (PACER Dkt. No. 31).   Landmark informed EPA that the request was

aimed primarily at records that would indicate whether EPA's *senior decisionmakers* were

engaged in efforts to manipulate EPA's official business for political purposes and coordinating

such efforts with the White House or with special interest groups.  EPA requested that the scope

be narrowed to apply only to the most senior policymaking officials in the EPA headquarters.

Pl.'s Opp. To Def.'s Mot. For S.J. Matthew C. Forys Declaration at ¶ 6 (PACER Dkt. No. 31-1).

Landmark agreed to limit the scope of its request to "senior officials in EPA HQ."  Pl.'s Opp. To

Def.'s Mot. For S.J. Matthew C. Forys Declaration at ¶ 7 (PACER Dkt. No. 31-1).  At no time

did Landmark contemplate, discuss, or agree to exclude then-Administrator Lisa Jackson or

Deputy Administrator Robert Perciasepe.  Pl.'s Opp. To Def.'s Mot. For S.J. Matthew C. Forys

Declaration at ¶ 8 (PACER Dkt. No. 31-1).

    B.  *Initiation Of Litigation.*

On October 18, 2012, EPA rejected Landmark's appeal of EPA's denial of expedited

processing.  Pl.'s Complaint at ¶ 15 (PACER Dkt. No. 1).  Having exhausted its administrative

remedies, Landmark initiated the instant suit on October 22, 2012.  Pl's Complaint (PACER Dkt.

No. 1).

On October 23, 2012, EPA circulated the first of two litigation hold notices to Agency

officials directing those individuals to preserve "any materials, whether paper, electronic, or

tangible things, such as laboratory samples or other physical evidence, that are potentially

relevant to [Landmark's FOIA request]."  Exhibit 2, October 23, 2012 Litigation Hold

Memorandum ("First Litigation Hold").   This memo directed officials to preserve "all ESI

[Electronically Stored Information] including, but not limited to: · emails,

. . .."  *Id.* at 2.  The memorandum stated the need to preserve potentially responsive materials:

> It does not matter whether the ESI is stored on optical disks (e.g., DVDs and
> CDs), flash memory (e.g., "thumb," "flash," or other USB drives), PDAs or
> mobile/smart phones (e.g. BlackBerry), network drives (e.g. F, G, H, J, R, and Z
> drives), your EPA-issued desktop and/or laptop computer, privately owned
> computers or other devices, or in personal email accounts.

*Id.* at 3.

The First Litigation Hold instructed that all emails on personal accounts be preserved even if forwarded to an Agency account:

> Refrain from using your personal email account for Agency business.  If you use or have used your personal email account for Agency business, do not delete any PRI [potentially relevant information] from your personal email account.  You may have to intervene in order to prevent such emails from being automatically deleted.  *Forwarding emails from your personal email account to your agency account will not relieve you of the responsibility for preserving the emails in your personal account.*

*Id.* at 6 (emphasis added).

This directive requires emphasis because both the former Administrator and the Deputy Administrator rest the legitimacy of their non-preservation of emails on their claimed practice of forwarding personal emails into their respective official EPA email accounts.   As the evidence shows, see below, whether they actually did so was never subject to government audit and evidence exists in the case of the Administrator that the practice was not followed.  The Administrator never reviewed her personal emails for responsive records or documents.  The Deputy Administrator looked at them just before his deposition.  Both deleted emails regularly, the Administrator *en masse*.

EPA counsel distributed this memorandum to 45 EPA officials including Eric Wachter (Director of the Office of the Executive Secretariat) and Aaron Dickerson (Executive Assistant to the Administrator) from the Office of the Administrator.  The hold was NOT distributed to then-Administrator Jackson.[3]  *Id.* at 7.

Attached to the memorandum is a "Questionnaire Details Report" disclosing whether EPA officials had "read the litigation hold notice," "understood" their legal obligations under the

---

[3] A subsequent Litigation Hold Memorandum was sent on August 20, 2013, to an expanded list of Agency officials, including former Administrator Lisa Jackson.  Exhibit 3, August 20, 2013 Litigation Hold Memorandum ("Second Litigation Hold").  Ms. Jackson testified that she did not know of the hold until she was informed of it months later by her private counsel.  Jackson Dep. at 55:15-56:6.

notice, "understood" the meaning and scope of the notice, and whether the official was aware of any other custodians who may have had potential responsive records. *Id.* ("Questionnaire Details Report"). Forty recipients of the hold responded that they had read and understood the memorandum. *Id.*

Five of the 45 officials, including then-Administrator Jackson's Executive Assistant, Aaron Dickerson, did not respond to this notice in any way. *Id.*

C. *Landmark's Initial Concerns About EPA's Preservation Obligations.*

Concerned that EPA might not be adhering to its record preservation obligations, on December 12, 2012, Landmark sought injunctive relief from this Court that EPA take the necessary steps to preserve repositories of potentially responsive records. Pl.'s Motion for Preliminary Injunction (PACER Dkt. No. 14). Landmark stated that in prior FOIA litigation brought by Landmark, EPA had failed to preserve and secure repositories of potentially responsive information and failed to properly circulate the request to relevant officials. *Id.*

EPA opposed this motion, stating that it had "taken affirmative steps to preserve information responsive to the [FOIA] request, including issuance of a litigation hold." Def.'s Opp. To Pl.'s Mot. for Preliminary Injunction at 18 (PACER Dkt. No. 16). In an accompanying declaration, Eric Wachter (Director of the Office of the Executive Secretariat) stated that he had "read and understood the meaning and scope of the litigation hold notice, and that I will comply to the best of my ability with the EPA's obligation to preserve information relevant to this FOIA litigation." Opp. To Pl.'s Mot. for Preliminary Injunction, Declaration of Eric Wachter, December 19, 2012 ("Wachter December 19 Dec."), ¶ 15 (PACER Dkt. No. 16-1). Mr. Wachter also stated that his "staff has been instructed to comply with all preservation obligations

for relevant information concerning this FOIA request and FOIA litigation." Wachter December 19 Dec., ¶ 15.

EPA did not provide a copy of the litigation hold memorandum to this Court or Landmark in its papers opposing the motion.

Relying on EPA's commitments and Mr. Wachter's assurances, this Court denied the motion. Order Denying Pl.'s Mot. For Pre. Inj., Dec. 20, 2012 (PACER Dkt. No. 18).

D. *EPA's Delays And Misrepresentations In Searching For Records From The Office Of The Administrator And The Office Of The Deputy Administrator.*

Landmark and EPA agreed to a production and scheduling order proposed by EPA and signed by this Court on February 19, 2013, requiring EPA to produce responsive records by February 7, 2013, and February 27, 2013, for documents to be reviewed by the Executive Office of the President. Scheduling Order, February 19, 2013 (PACER Dkt. No. 23) ("February 19 Order"). Landmark consented to an additional production on March 14, 2013, but was not asked for and did not agree to any corresponding delay in the briefing schedule. The February 19 Order provided for a "meet and confer" period and, in the absence of agreement regarding withholdings, required EPA to file any dispositive motions on or before March 20, 2013. *Id.*

On March 21, 2013, counsel for EPA and Plaintiff met and conferred about various matters. EPA staff elected not to participate. Pl.'s Opp. To Def.'s Mot. For S.J., Michael J. O'Neill Declaration, ¶¶ 3, 4 (PACER Dkt. No. 31-2). Landmark registered concerns about EPA's search and record production. Landmark requested that EPA address whether personal emails of applicable officials were searched given the production of at least one record from the Deputy Administrator's email account demonstrating he had received official email on his

personal email account.   Pl.'s Opp. To Def.'s Mot. For S.J. Michael J. O'Neill Declaration, ¶ 7 (PACER Dkt. No. 31-2).

EPA stated that questions regarding the scope of EPA's search would be addressed in EPA's summary judgment papers.  Pl.'s Opp. To Def.'s Mot. For S.J. Michael J. O'Neill Declaration, Exhibit D (PACER Dkt. No. 31).  During the March 21, 2013, meet-and-confer session and throughout the email exchanges with counsel for Defendant, counsel for Plaintiff was never informed that the FOIA search for responsive records excluded a timely search of the Office of the Administrator, and that no search at all had been made of the Deputy Administrator's documents.  Pl.'s Opp. To Def.'s Mot. For S.J. Michael J. O'Neill Declaration, ¶ 13 (PACER Dkt. No. 31-2).

On April 3, 2013, this Court denied Defendant's first motion for an extension of time and ordered that Defendant's Motion for Summary Judgment be filed no later than April 30, 2013. Order (PACER Dkt. No. 26).  On April 12, 2013, Defendant provided to Landmark a "final" production of responsive records.  Def.'s Mot. For S.J., Exhibit E (PACER Dkt. No. 30).

On April 30, 2013, EPA moved for an additional extension of time.  In support of this request, Defendant's counsel stated that "there were a number of additional documents that may potentially be responsive to your request which have not yet been reviewed by the agency." Pl.'s Opp. To Def.'s Mot. For S.J. Michael J. O'Neill Declaration, ¶ 14, Exhibit F (PACER Dkt. No 31) (April 30, 2013 email from Heather Graham-Oliver to Richard P. Hutchison titled "Landmark v. EPA").

Defendant did not either disclose to this Court or to opposing counsel the real reason for the extension.  As explained in detail below, the delayed (and *ad hoc*) search of the Administrator's government email account produced no documents even as searches of other

officials produced Administrator-connected emails, rendering even the delayed search of the

Administrator's records inadequate on its face.  Nor did EPA disclose that it had never before

conducted any search at all of the Deputy Administrator's office and his repositories.  Exhibit 4,

Deposition of Jonathan Newton ("Newton Dep.") at 38-40, and Exhibit 5, Dep. Ex. 53.[4]  No

search at all.

 The further production of records approximately doubled the number of records EPA

deemed responsive to Landmark's request.  Def.'s Mem. In Support of Mot. For S.J. (PACER

Dkt. No. 30).

 EPA filed its Motion for Summary Judgment on May 15, 2013, claiming it had conducted

an adequate search for requested records, that it had provided Plaintiff with a description of

withheld information, and that it had identified applicable FOIA exemptions.  Def.'s Mot. For

S.J. (PACER Dkt. No. 30).  In declarations attached to this filing, an EPA official testified that

after collection of documents, Office of Executive Secretariat staff and Office of General

Counsel staff reviewed documents for responsiveness.  Declaration of Eric Wachter, May 15,

2013 ("Wachter May 15 Dec."), ¶ 16 (PACER Dkt. No. 30).

 In both his Declaration and Supplemental Declaration, Mr. Wachter testified that records

were deemed to be responsive to the Plaintiff's FOIA request if they were "internal or external

records from any party that discussed or memorialized discussions of delaying a rulemaking until

after the election of 2012 or after November 2012 *for political reasons.*"  Wachter May 15 Dec.,

¶ 16 (PACER Dkt. No. 30-1) Declaration of Eric Wachter, July 24, 2013 ("Wachter July 24

Dec."), ¶ 19 (PACER Dkt. No. 35-7) (emphasis added).  Landmark's FOIA request contained no

such limitation.

---

[4] All cited exhibits marked in the depositions are attached hereto to provide a complete record of discovery for this Court.

Landmark opposed EPA's Motion: EPA engaged in a bad faith implementation of an agreement to narrow the scope of search to EPA's senior officials in the Washington D.C. headquarters and EPA failed to search Ms. Jackson's files in a timely manner. Pl.'s Opp. To Def.'s Mot. For S.J. (PACER Dkt. No. 31). Landmark restated its concern that because the delay had "stretched over the transition period from one administrator to another" there was a potential for spoliation of records. *Id.* at 14. Landmark sought this Court's permission to conduct discovery to "afford Landmark the opportunity to determine the circumstances surrounding EPA's improper limitation of the scope of its search for responsive records – including whether EPA employees have acted in bad faith; and to determine the actual scope of EPA's search for responsive records." *Id.* at 22.

EPA stated in reply that it had "issued a preservation notice for records related to this case." Def.'s Reply Mem. at 3 (PACER Dkt. No. 35). The notice was not provided to this Court or Landmark in its papers. "EPA issued an agency-wide policy requiring the maintenance and preservation of electronically stored information subject to litigation holds, which would include the information from the former Administrator responsive to this request." *Id.* at 3. Eric Wachter declared that he "certified that I read and understood the meaning and scope of the litigation hold notice" and "instructed my staff *to comply* with all preservation obligations for relevant information concerning this FOIA request and FOIA litigation." Def.'s Reply Mem., Wachter July 24 Dec., ¶¶ 31, 32 (PACER Dkt. No. 35-7) (emphasis added).

Mr. Wachter served (and serves) as the Director of the Office of Executive Secretariat. Def.'s Mot. for S.J., Wachter May 15 Dec. ¶ 1 (PACER Dkt. No. 30-1). This office is responsible for "processing Freedom of Information Act ("FOIA") requests for the Office of the Administrator . . .." Wachter May 15 Dec. ¶ 2.

12

EPA promised to waive privilege and provide the litigation hold notices to Landmark on the record before this Court on April 9, 2014.  Exhibit 6, Transcript of Status Conference, April 9, 2014, at 13:15-16.  After demands by Landmark, Exhibit 7, "May 21, 2014 email from Arthur Fergenson to Heather Graham-Oliver," it finally sent the hold notices to Landmark on May 28, 2014, six plus weeks after it promised this Court it would do so.  Exhibit 8, "May 28, 2014 email from Heather Graham-Oliver to Arthur Fergenson."

This Court denied EPA's request for summary judgment. Identifying the existence of two issues--"the possibility that unsearched personal email accounts may have been used for official business raises the possibility that leaders in the EPA may have purposefully attempted to skirt disclosure" and "the possibility that the agency purposefully excluded the top leaders of the EPA from the search"--this Court granted Landmark the right to conduct limited discovery. Memorandum Opinion, Aug. 14, 2013, at 13-14 (PACER Dkt. No. 39).

E.  *Pertinent Discovery Findings.*

This Court stated: "The record leaves open the possibility that, one way or another, the agency engaged in bad faith by excluding the top politically appointed leaders of the EPA from Landmark's FOIA request at least initially."  Memorandum Opinion, Aug. 14, 2013, at 11 (PACER Dkt. No. 39).  This Court continued: "The possibility that EPA engaged in such an apparently bad faith interpretation, raised by Landmark's allegations and supported by EPA's inconsistent filings, precludes this Court from entering summary judgment in their favor as to the adequacy of the search."  *Id.* at 12.

This Court's suspicions were well founded.

1.  *Landmark's Discovery Efforts.*

Landmark submitted its initial set of interrogatories and its initial request for production of relevant documents on September 18, 2013.  EPA provided its responses on November 4, 2013.  Exhibit 9, Defendant EPA's Response to Plaintiff's First Set of Interrogatories, Exhibit 10, Defendant EPA's Response to Plaintiff's Request for Production.

Landmark submitted its second set of interrogatories and second request for production of relevant documents on November 12, 2013.  EPA provided its responses on December 2, 2013. Exhibit 11, Defendant EPA's Response to Plaintiff's Second Set of Interrogatories, Exhibit 12, Defendant EPA's Response to Plaintiff's Second Request for Production.

Landmark completed four depositions: Lisa Jackson, the former Administrator (March 27, 2014), Eric Wachter, the Director of the Office of the Executive Secretariat (February 12, 2014), Jonathan Newton, the FOIA Officer assigned to the Office of the Administrator (February 25, 2014), and Aaron Dickerson, the Executive Assistant to then-Administrator Jackson (February 11, 2014).

Landmark deposed Deputy Administrator Robert Perciasepe (February 21, 2014), subject to continuation.  The continuation is required because EPA counsel directed the Deputy not to answer questions that this Court ruled were properly put to Ms. Jackson.  This Court granted Landmark's oral motion to compel answers in Ms. Jackson's deposition on March 27, 2014. Exhibit 13, Transcript of Hearing Before Hon. Royce C. Lamberth, March 27, 2014.

As a result of this Court's ruling, Ms. Jackson disclosed in answers to her deposition that briefing books were prepared for her whenever she was to discuss with Cass Sunstein, then-Administrator of the Office of Information and Regulatory Affairs (OIRA), regulatory approvals from the United States Office of Management and Budget.  Jackson Dep. at 96-97.  EPA agreed to search for and produce all responsive briefing books as part of a new and comprehensive

14

FOIA search, and produce documents on a rolling basis. Exhibit 14, "June 10 email from

Heather Graham-Oliver to Arthur Fergenson." Not a single briefing book has been produced.

Not a single document has been produced by EPA in fulfillment of its pledge to make rolling

production.

    2.  *EPA Delayed Searching The Records Of The Administrator And Deputy Administrator.*

    EPA confirmed receipt of Landmark's FOIA on August 20, 2012. Wachter December 19

Dec. ¶ 5. On September 27, 2012, Mr. Newton (the FOIA Officer from the Office of the

Administrator with the responsibility to process Landmark's FOIA request) submitted an inquiry

on processing the FOIA to EPA's Office of Policy. Newton Dep. at 11:9-18. The inquiry

resulted in then EPA general counsel Scott Fulton reviewing the FOIA request. Newton Dep. at

13:1-3.

    On October 9, 2012, Mr. Newton sent an email that stated that the agreement with

Landmark was as follows: "Landmark agreed to limit the scope of [its FOIA request] to AA's,

DA's, and COS in EPA Headquarters." Exhibit 15, Dep. Ex. 19. Newton Dep. at 16:3-25, 17:1-

20.

    This was false.

    The email was sent to Kevin Miller and Mindy Kairis, lawyers in EPA's General Counsel

Office. It was also sent to Eric Wachter, the author of each of the declarations filed in this Court.

*Id.*

    On October 23, 2012, a full two weeks later, Jonathan Newton distributed Landmark's

FOIA request to Agency FOIA coordinators, except for the coordinators with responsibility for

conducting FOIA searches of the records of the Administrator and Deputy Administrator.

Exhibit 16, Dep. Exhibit 21. Mr. Newton's email to FOIA coordinators directing that the search

15

be initiated used the limiting language "only applies," thereby effecting exclusion of the

Administrator and Deputy Administrator:

> **Note:  This request has been modified.**  <u>The search only applies to Assistant
> Administrators, Deputy Assistant Administrators and Chiefs of Staff in EPA
> Headquarters.</u>

*Id.*

This was false.

On October 25, 2012, Mr. Newton sent an email to FOIA coordinators stating that they

had questions about the search request.  Mr. Newton wrote that EPA would not be following the

more common practice of creating a single search string to be uniformly applied by FOIA

coordinators throughout the Agency:

> There will not be an "automated search" for this request.  However, potential key words
> for a manual search could include: "draft or proposed" within the same sentence as "rule,
> regulation or policy." Those suggestions are not meant to be exhaustive. The original
> request elaborates upon the records that are sought.

Exhibit 17, Dep. Exhibit 1.  Exhibit 18, Deposition of Aaron Dickerson ("Dickerson Dep.") at

17:1-7, 20:17-25, 21:1.

Twenty-two days elapsed before any request to search for Landmark's FOIA request was

sent to the persons responsible for FOIA searches for records of the Administrator and Deputy

Administrator: Aaron Dickerson and Nena Shaw, respectively.  On November 14, 2012, Mr.

Newton forwarded to Mr. Dickerson and Ms. Shaw the emails he had previously sent to the

FOIA coordinators for everyone but the Administrator and Deputy Administrator.  Exhibit 17,

Dep. Exhibit 1, Newton Dep. at 23:19-25.

16

Mr. Dickerson and Ms. Shaw were told that "we decided against an automated search," and that "universal search terms may be difficult to establish . . .."  Exhibit 17, Dep. Exhibit 1. Nonetheless, "it [*sic*] is the type of memo/policy that someone should remember."  *Id.*  The guiding principle, thus, for the search was "memory."

The internal deadline for the records search was October 30, two weeks before any request for documents was sent to Mr. Dickerson and Ms. Shaw.  *Id.*

"Richard Windsor" was the designation of the secondary email account Lisa Jackson used while serving as Administrator.  Jackson Dep. at 24:20-21, 25:1-2.  The primary account was the email address given to the general public and the secondary account was the email account which she used "to conduct business with her senior staff."  Dickerson Dep. at 9:4-10. On November 16, 2012, Aaron Dickerson, then-Administrator Jackson's Executive Assistant, notified Jonathan Newton that he had "searched the Richard Windsor account as well as verbally spoke with the Administrator and did not find any responsive documents."  Dickerson Dep. at 29:20-24.

On November 14, 2012, Jonathan Newton directed Nena Shaw (Executive Assistant to Deputy Administrator Perciasepe) to perform a search for records.  Exhibit 17, Dep. Ex. 1. Newton Dep. at 23:3-24.  As of December 12, 2012, Ms. Shaw had still not performed a search, prompting Mr. Newton to once again request that Ms. Shaw do so.   Exhibit 19, Dep. Ex. 54. Newton Dep. at 36:3-18.  As of January 17, 2013, Ms. Shaw had not performed a search. Newton Dep. at 38:9-12.  On January 17, 2013, Mr. Newton sent Ms. Shaw an email stating "Hey Nena, we will really need this search completed.  We are on a court deadline to close this request by the end of the month and there are several levels of review that must occur before that happens."  Exhibit 19, Dep. Ex. 54.  Despite Mr. Newton's promptings, Ms. Shaw never

performed a search of the Deputy Administrator's records and, by April 30, 2013, she had

"moved to another job" inside of EPA. Newton Dep. at 39:9-11, 46:5-12, Exhibit 20, Deposition

of Eric Wachter ("Wachter Dep.") at 115:13-16.

Deputy Administrator Perciasepe testified that Ms. Shaw was diligent in responding to

FOIA requests. Exhibit 21, Redacted Deposition of Robert Perciasepe ("Perciasepe Dep.") at

42:7-10.[5] Ms. Shaw was never disciplined for her failure to search for responsive records.

Newton Dep. at 29:22-25. The records of the Deputy Administrator were not searched until

April 30, 2013. Newton Dep. at 38-40, Exhibit 5, Dep. Ex. 53.

On April 29, 2013, Mr. Wachter testified that when Mr. Newton and the General

Counsel's office were reviewing collected documents, they discovered that documents of the

Administrator and the Deputy Administrator had been found by other program offices that

weren't found in the "initial" search. (Of course, there had been no "initial search" of the

Deputy's records by anyone. Not even a "should remember" search.) Mr. Wachter further

testified that "in an abundance of good faith we decided we should go back and do another [*sic*]

search." Wachter Dep. at 69:13-19.

Counsel for EPA Heather Graham-Oliver emailed Jennifer Hammitt and Kevin Miller,

both attorneys in EPA's Office of General Counsel, on Sunday, April 28, just before midnight to

advise that final clean-up of the brief would be completed by the following day. Exhibit 22,

"EPA PROD1_0330." Ms. Hammitt set a meeting with Messrs. Wachter, Newton, Miller and

Ms. Graham-Oliver for April 29 at 2 pm to finalize the Landmark brief and declaration. Exhibit

23, Dep. Exhibit 8 at 1.[6] On April 29, a flurry of emails were sent among Mr. Newton, Ms.

---

[5] Mr. Perciasepe's redacted deposition, attached as Exhibit 21 is broken into three sections (21-A, 21-B, and 21-C), for electronic filing.
[6] Deposition Exhibit 8 was introduced as a multi-page exhibit. Plaintiff has inserted page numbers into this Exhibit for this Court's reference.

Hammitt, Mr. Miller, Ms. Graham-Oliver, and Mr. Wachter with the following Landmark FOIA-related pdfs attached: Agreement to Narrow Scope; Aaron Response; and the subject line "Secondary Account No Records Response." *Id.* at 2-5.

Following this flurry of activity, in which documents relevant to the Landmark FOIA search were exchanged among three lawyers and Mr. Wachter, Ms. Hammitt scheduled a meeting on April 30 at 9:30 am. *Id.* at 6. The meeting was sent to Messrs. Dickerson, Miller and Wachter. The Subject of the meeting was: "Urgent: Discussion of Search for Landmark FOIA . . .." Hammitt scheduled a meeting for half an hour later with Mr. Miller and Ms. Graham-Oliver, subject: "Landmark Search Options." *Id.* at 7.

At the end of the two meetings, Ms. Hammitt sent an email to Mr. Miller, subject: "DRAFT: Landmark Request for an Extension of Time." *Id.* at 8. Less than four hours later, Ms. Hammitt sent an email to Messrs. Newton, Wachter, and Miller, marked "High Importance" with the subject: "Landmark Case – Next Steps (Re: Search String for Landmark FOIA using Notes Syntax)." *Id.* at 9. The text of the message asks that "those documetns [*sic*]" be loaded into the database ASAP so that unreviewed documents can be reviewed "as quickly as possible." *Id.*

The evidence is plain: EPA lawyers discovered the failed search of the Administrator and the non-search of the Deputy Administrator and drafted a request for extension of time, the extension that, with the Wachter declaration, contained materially misleading statements. Mr. Wachter was an integral part of the process and appears on key emails of the "fire drill" sequence. From the first email evidencing panic, from Mr. Newton to Ms. Hammitt on April 29 at 12:47 pm, to the order to load and review the documents that needed to be searched applying

the new search string, from Hammitt to Newton, Wachter, and Miller on April 30 at 2:10 pm, was less than 26 hours.

Mr. Newton claimed in his email to FOIA coordinators that "universal search terms may be difficult to establish." Exhibit 17, Dep. Exhibit 1. He was wrong. It took about a day to craft universal search terms and to seek an extension of time without telling this Court the truth about why it was necessary.

The search "string" was applied to the government email accounts of the then-former Administrator and Deputy Administrator but not to their personal email accounts or to their text messages. Dickerson Dep. at 74:23-25, 75:1-13, Jackson Dep. at 55:18-21, 56:1-6, Newton Dep. at 26:5-11, Perciasepe Dep. at 27:17-25, 28:1-23. The Dickerson 48-hour search of the Administrator's records produced not a single document, and the Deputy's records had never been searched. Employing the universal search terms put together on short notice by the General Counsel's Office captured a "huge" number of potentially responsive records that were reviewed, evaluated and produced within two weeks. Newton Dep. at 60:25; 61:20-25.

The General Counsel and his staff attorneys had previously been involved in the sensitive matter of Landmark's FOIA request, several times, in fact, but had never before contributed its expertise to solve the "difficult" universal search terms problem.

Although a universal search terms string had now been produced, EPA did not apply the new search terms to the records of any other senior official covered by Plaintiff's FOIA. Wachter Dep. at 73:8-25.

EPA's usual practice was to develop a single search string that would be applied uniformly across all repositories. Newton Dep. at 57:12-14. Not here.

### 3. *EPA Made False And Misleading Statements.*

20

Litigants "who appear before a federal court, are subject to duties of candor, decorum, and respect for the tribunal and co-parties alike …"  *Hollingsworth v. Perry*, 133 S.Ct. 2652, 2672 (2013) (Kennedy J. dissenting).  EPA has made false and misleading statements under oath and has not corrected the record.

In support of EPA's Motion for Summary Judgment, Mr. Wachter declared: "In the course of finalizing the materials for this April 30, 2013, deadline, my office determined that the search for documents from the former Administrator, the Deputy Administrator, and the Chief of Staff in the Office of the Administrator may have been insufficient."  Wachter May 15 Dec., ¶ 19 (PACER Dkt. No. 30-1).

This is false.

In his supplemental declaration, Mr. Wachter declared:

As part of finalizing the documents for the Court's April 30, 2013, filing deadline, my office carefully reviewed the document search that was performed between October 23, 2012, and January 25, 2013.  *In the course of this review, on April 29, 2013, my office determined that the search for documents from the former Administrator, the Deputy Administrator, and the Chief of Staff in the Office of the Administrator may have been insufficient. In the interest of a complete and adequate response to Plaintiff's request, the EPA determined that another search would be required of the accounts of the former Administrator, Deputy Administrator, and Chief of Staff in the Office of the Administrator.*  The EPA immediately notified plaintiff and the Court of this deficiency and that there would be a number for additional documents that may potentially be responsive to the Plaintiff's request.

Wachter July 24 Dec., ¶ 21 (PACER Dkt. No. 35-7) (emphasis added).

This is also false.

Mr. Wachter did not disclose in either declaration that no search of Deputy Administrator Perciasepe's documents had been conducted as of January 25, 2013, and the only reasonable interpretation of his language was that a search of the Deputy's documents had been undertaken prior to April 29.

The non-search was testified to extensively during depositions.  No substitutes for the Declarations have ever been filed.  No effort at correction has ever been made.  False statements to this Court are of no apparent concern to EPA.

On April 30, 2013, EPA moved for an extension of time to file a summary judgment motion.  EPA's Third Motion for an Extension of Time to File Motion for Summary Judgment and to Amend Scheduling Order (EPA's Third Motion for Extension), April 30, 2013 (PACER Dkt. No. 27).  EPA stated:

> Defendant has worked diligently ever since to abide by the Court's order, including working on weekends, and has in fact prepared a draft Motion, a 326 page *Vaughn* index and a witness declaration.  However, in the process of finalizing the pleadings, EPA determined that another search is required and that there are a number of additional documents that may potentially be responsive to the Plaintiff's request, which have not yet been reviewed by the agency.

EPA's Third Motion for Extension, April 30, 2013 at 2 (PACER Dkt. No. 27).

This is materially misleading.  Facts material to this Court's decision whether to grant the relief sought by EPA certainly included the real reasons why more time was needed.  EPA's representation to this Court presents EPA as being especially diligent and sensitive to Landmark's needs.  The truth, owed to this Court and Landmark at the time, was that EPA had been anything but diligent.  That it had abandoned its "regular order" and sent Landmark's request out for *ad hoc* searching by each FOIA coordinator.  When this, predictably, failed and documents found by some offices failed to show up in the Administrator's "search" (zero documents found), EPA panicked.  In panicking it deceived this Court.

Of course, the use of the words "another search" was false because there was never a search of the Deputy's office.  There is no telling what this Court would have done had EPA told the truth.  At that point, this Court had not ordered discovery, so EPA would have been confident

that it could continue to cover up its flouting of its FOIA obligations.  Ultimately, however, the
cover-up failed.  The individuals responsible for the cover up may have to face the consequences
of their acts.

> 4. *Lisa Jackson Used A BlackBerry To Communicate With Individuals And
> Groups Outside Of EPA.*

Lisa Jackson served as Administrator for EPA from January 2009, through February 14,
2013.  Jackson Dep. at 12:19-20.  Ms. Jackson testified that while she was Administrator she
used her government BlackBerry (with a government telephone number) to communicate with
"people in corporations, people in the environmental movement, people in government, people in
nonprofits, people in academia, my family."  Jackson Dep. at 26:17-27:3.  She "would be
grateful" when those individuals would text her.  Jackson Dep. at 27:6-7.  For Ms. Jackson,
"being accessible to the people I serve [was] very important."  Jackson Dep. at 28:12-13.  She
did not take any actions to preserve text messages, assuming they were being preserved.  Jackson
Dep. at 22:17.

> 5. *Lisa Jackson Used Personal Email To Communicate With Individuals And
> Groups Outside Of EPA.*

Ms. Jackson testified that "lots" of people had her personal email address.  Jackson Dep.
at 40:21.  She testified that people in academia, corporations and the environmental
organizations had her personal email address.  Jackson Dep. at 41:1-6.  Ms. Jackson testified that
it was her practice to "send things to the Richard Windsor account so they could be appropriately
captured for government recordkeeping."  Jackson Dep. at 25:11-14.  Contrary to the instruction
of the First Litigation Hold, she would delete email communications in her personal email
repository "rather frequently."  Jackson Dep. at 61:11-12.

> Oftentimes I was so busy that I would just mass delete emails, even ones I hadn't
> read because they were – the Verizon interface was pretty bad, and you would

23

> almost have to do it en masse because trying to do it in any other was very, very difficult.  So there are undoubtedly emails I just never opened because the mailbox was flooded and I needed to unflood it to reactivate it.

Jackson Dep. at 62:8-16.

Ms. Jackson did not perform a search of her personal email account to determine whether there were responsive records to Landmark's FOIA until July or August of 2013, at least five months after she left her position as Administrator.  Jackson Dep. at 55:20-21.  EPA never conducted a search of Ms. Jackson's personal email account.  Dickerson Dep. at 38:14-16.  Neither EPA nor any other representative from the government communicated any instructions to Ms. Jackson regarding preserving personal emails until "August or July of 2013."  Jackson Dep. at 55:20-21.

When asked whether she or her counsel had contacted Verizon to determine whether the deleted emails could be recovered, Ms. Jackson stated: "Well, this is between me and my counsel, but I was under the impression that they were not available, that there was no way to get all of those things that I had to delete over time back."  Jackson Dep. at 63:1-4.

No audit or independent review of Ms. Jackson's personal email practices was ever conducted by EPA to ensure Ms. Jackson adhered to her legal obligations.  Jackson Dep. at 43:10-44:1, Wachter Dep. at 16:10-18.  Mr. Dickerson testified that he had seen instances of Ms. Jackson's personal emails "where someone might have emailed her personal email account, and then she would either respond or cc: or she would forward the email to her secondary account so it would be captured as a record."  Dickerson Dep. at 34:15-19.  Mr. Newton testified that the Richard Windsor account was set up so that all documents sent to or from the Administrator could be located there to fulfill legal obligations (to wit, responding to FOIA requests and producing documents in a litigation): "The way the Richard Windsor account was managed on a

24

daily basis meant that anything potentially responsive would have been placed there." Newton Dep. at 26:5-8.

Not only did the Agency do nothing to assure that the Administrator was adhering to this practice, but Landmark located at least one document that demonstrated that she failed to do so. Exhibit 24, Dep. Exhibit 4. Indeed, it would be nearly impossible for her to adhere to this practice given her commitment to communicating far and wide through personal emails and text messages on matters of Agency policy. (No text messages were ever forwarded by her to her Richard Windsor account, Jackson Dep. at 26:8-12, 51:9-21, 52:1-14, rendering all FOIA searches involving the Administrator inadequate and contributing to the opportunities for destruction of documents relevant to litigation.)

In her testimony, Ms. Jackson testified that it was her practice "to send things to the Richard Windsor account so they could be appropriately captured for government recordkeeping." Jackson Dep. at 25:11-14. She later described this practice as "forwarding any emails which could be construed as pertaining to government business or government records into the EPA system so that they could be captured and preserved there . . .." Jackson Dep. at 42:11-15.

But for these emails to be "captured and preserved" for the "potentially responsive" purposes identified, they all had to be sent to the same place, the one place where Administrator records would be preserved and searched for FOIA, for litigation, and for other legally-mandated reasons. Later in Ms. Jackson's deposition, when she was confronted with evidence that she failed to follow her practice of sending her emails to the one place in the EPA system where Administrator records could be found, she stated that it was enough that her personal emails might have been sent to "eight or nine" different places in EPA. Jackson Dep. at 52:15-17. Her

text messages were not forwarded by her to any EPA account, much less her Richard Windsor account.  Jackson Dep. at 26:8-12.

### 6.  *Deputy Administrator Robert Perciasepe's Personal Email Practices.*

Deputy Administrator Robert Perciasepe testified that it was "extremely rare" for him to receive EPA related communications in his personal email.  Perciasepe Dep. at 18:15.  When he did receive these emails, it was his practice to "forward it in to, to capture it into the EPA system."  Perciasepe Dep. at 16:17-19.  Mr. Perciasepe, however, failed to prevent spoliation by observing the First Litigation Hold's directive: "*Forwarding emails from your personal email account to your agency account will not relieve you of the responsibility for preserving the emails in your personal account.*"  Exhibit 2, First Litigation Hold.  Instead, Mr. Perciasepe stated that he would delete emails from his personal account and "forward into, the, to be captured in the EPA system, we're supposed to remove it from the other systems."  Perciasepe Dep. at 31:2-4.

No audit or independent review of Mr. Perciasepe's personal email practices was ever conducted by EPA to ensure Mr. Perciasepe adhered to the practice he testified to.  Wachter Dep. at 16:10-18.

### 7.  *Landmark Submitted Multiple Requests To EPA To Recover And Search Ms. Jackson's BlackBerry And The BlackBerries Of All EPA Senior Officials.*

Immediately upon becoming aware that Ms. Jackson utilized a BlackBerry to communicate via text, Landmark requested EPA take steps to secure this device.  Dickerson Dep. at 65-68.[7]

---

[7] Landmark has continued to press EPA for an update regarding its efforts to recover Ms. Jackson's BlackBerry. See Exhibit 25, "May 1, 2014 email from Arthur Fergenson to Heather Graham-Oliver."  To date, Landmark has not received any status report on EPA's efforts to recover and search this device.

Counsel for EPA informed this Court during an April 9, 2014 status conference that she would undertake an effort to recover these materials:

> To the extent that any senior official believes that texts or personal e-mails may be responsive to Landmark's FOIA request, but those texts or personal e-mails have been deleted, the EPA will determine whether the provider can aid in providing said text messages and/or personal e-mail messages.
>
> I am not an IT person so I do not know exactly what would be on a BlackBerry. I think that what would be on there, that's not on the server, and I don't want to mislead the Court, would be text messages. That is why we are going to – Verizon and whoever else – may be the provider to see - if we have to, if we need to retain those text messages.

Exhibit 6, Transcript of Status Conference, April 9, 2014, at 13:1-13.

Landmark has sent repeated demands to opposing counsel for EPA about recovering, searching, and producing documents including text messages from all relevant personal email repositories and BlackBerries for Ms. Jackson and all other senior officials. Emails on May 1, May 14, May 21, May 30, and June 12 of this year. Exhibits 25, 26, 27, 28 and 29 respectively.

In its May 1, 2014, email counsel for Landmark requested that EPA "provide information about the securing of all documents from BlackBerries (text messages) and personal email accounts as they existed not later than the issuance of the litigation hold memorandum by EPA." Exhibit 25, "May 1, 2014 email from Arthur Fergenson to Heather Graham-Oliver." Landmark also requested that EPA advise Landmark

> on [EPA's] recovery efforts and whether you can assure that all repositories in which official government business documents (within the framework of the agree-upon modification to limit the search to senior government officials) resided as of the litigation hold date have been fully populated, and subject to search, with zero loss.

*Id.*

No response.

27

On May 14, 2014, counsel for Landmark emailed counsel for EPA seeking information on EPA's efforts to recover text messages and Ms. Jackson's BlackBerry.  Exhibit 26, "May 14, 2014 email from Arthur F. Fergenson to Heather Graham-Oliver."   Landmark also raised concerns about spoliation: "Our spoliation concern applies to all repositories of all senior officials at EPA.  Please advise on personal email accounts and text messages for each of the senior officials . . .."  *Id.*

No response.

On May 30, 2014, counsel for Landmark emailed counsel for EPA inquiring about the search for missing text messages:  "You told the Court that you were contacting Verizon to see if you could get the texts.  Where does that stand?"  Exhibit 28, "May 30, 2014 email from Arthur Fergenson to Heather Graham-Oliver."  Counsel for Landmark also inquired about EPA preservation practices: "We have asked you about senior officials and their repositories.  You have given us no answers to that either.  What did EPA do and when to preserve all their repositories?  Sending a litigation hold memo is certainly not enough; it has to be followed."  *Id.*

On June 10, 2014, two months and one day after promising this Court EPA would contact Verizon, EPA counsel stated that counsel for EPA had "reached out to Verizon wireless for records related to text messages from the BlackBerry of Lisa Jackson." Exhibit 14, "June 10, 2014 email from Heather Graham-Oliver to Richard P. Hutchison."

No response to request for information about other senior officials and their repositories.

On June 12, 2014, counsel for Landmark sent another email to counsel for EPA detailing what it believed were deficiencies in production related to spoliation: "EPA is fully responsible for any spoliation that occurred by the failure to secure repositories at the time of the issuance of

the litigation hold memorandum." Exhibit 29, "June 12, 2014 email from Arthur Fergenson to Heather Graham-Oliver."

No response.

EPA's conduct upon discovering the potential spoliation of responsive records in the present case contrasts markedly with its conduct in earlier litigation. In 2001, upon learning that it had destroyed repositories of potentially responsive records in contravention of this Court's order, EPA undertook immediate and extensive data recovery efforts to recover materials. These efforts included, among other things, referring the matter to EPA's Inspector General and contacting a "nationally recognized leader in data recovery services, to make every effort to recover data…" See Exhibit 30, *Landmark Legal Fdn. v. EPA*, Civil Action No. 00-2338, "Def.'s May 16, 2001 Status Report To The Court."

The order of the day for EPA throughout this litigation is to ignore the serious issues of spoliation that are raised by its own lack of adherence to the dictates of its own litigation hold memoranda and to the law. Promises are followed by inaction and reasonable requests for information grounded in the duty of EPA counsel to this Court and obligations to be forthcoming to Landmark about non-preservation of documents are met by silence.

### III. EPA ENGAGED IN SPOLIATION OF AGENCY RECORDS AND SHOULD BE SANCTIONED FOR ITS MISCONDUCT AND REFUSAL TO TAKE REMEDIAL ACTION.

*A. EPA Has A Duty To Preserve Potentially Responsive Records.*

Once litigation has commenced, or once a party "anticipates litigation," a party is under an obligation to preserve potentially relevant evidence. *Smith v. Café Asia*, 246 F.R.D. 19, 21, n.1 (D.D.C. 2007). A party has "an obligation to preserve and also not to alter documents it knew or reasonably should have known were relevant . . . if it knew the destruction or alteration

of those documents would prejudice [the opposing party]." *Shepard v. Am. Broad. Cos.*, 62 F.3d 1469, 1481 (D.C. Cir. 1995) (*citing Akiona v. United States*, 939 F.2d 158, 198 (9th Cir. 1991)). Once a party has notice that "the evidence is relevant to the litigation" or "when a party should have known that the evidence may be relevant to future litigation," it is under a duty to preserve the relevant documents.  *Gerlich v. Dept. of Justice*, 711 F.3d 161, 170 (D.C. Cir. 2013) (*citing Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)).

Electronically stored information ("ESI") "is routinely deleted or altered and affirmative steps are often required to preserve it.  Such deletions, alterations, and losses cannot be spoliation unless there is a duty to preserve the information, a culpable breach of that duty and resulting prejudice." *Rimkus v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010).

EPA had a duty to preserve repositories containing potentially responsive documents.  Its own litigation hold memoranda told it to.  Landmark did also, repeatedly, demanding personal emails and text messages.  This Court relied on sworn statements from EPA that it was doing what the law demanded.  EPA was not truthful.

This Court stated, in the March 27, 2014, hearing: "If you talk to any law firm in town, I think they expect their clients to hold everything."  Exhibit 13, Transcript of Hearing Before Honorable Royce Lamberth, March 27, 2014, at 22:23-24.

   B.  *EPA Engaged In Spoliation When It Willfully Breached Its Duty To Preserve Repositories Containing Responsive Records.*

Failure to preserve potentially relevant evidence becomes spoliation when that evidence is destroyed or is significantly and meaningfully altered.  See generally, The Sedona conference, The Sedona Conference Glossary: E-DISCOVERY & DIGITAL INFORMATION MANAGEMENT (SECOND EDITION) 48 (2007).  ("Spoliation is the destruction of records or

properties, such as metadata, that may be relevant to ongoing or anticipated litigation, government investigation or audit.") *Rimkus*, 688 F.Supp. at 612. Deletion of electronic records becomes spoliation when there is a duty to preserve the information, a culpable breach of that duty, and resulting prejudice. *Id.* A litigant engages "in spoliation of documents as a matter of law only if they had 'some notice that the documents were potentially relevant' to the litigation before they were destroyed." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002) (quoting, in part, *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991)).

EPA took no timely action to ensure Ms. Jackson preserved (or for that matter searched) her personal emails. These records were lost when Ms. Jackson engaged in a practice whereby she would "mass delete emails." Jackson Dep. at 62:8-16.

Ms. Jackson testified that she would communicate via text, but that she took no action to preserve these messages. Instead, she assumed "they were being preserved." Jackson Dep. at 22:11-17. They were not. They, too, are long gone as is the device on which they resided.

Actual destruction of documents, disposal of electronic devices, silence, and delay without demonstrating the slightest concern for the integrity of the judicial process or the rights of Landmark, constitute spoliation. EPA didn't and doesn't care, an attitude that it has carried into every aspect of its dealings with Landmark.

EPA has treated Landmark as an adversary from the receipt of its FOIA request, not as a rightful participant in a FOIA regime as enforcing principles of open government subject to oversight by its citizens.

    C. *Punitive Sanctions Are Necessary To Ensure EPA No Longer Engages In Deliberate Attempts To Avoid Its Obligations As A Litigant Before This Court or Any Federal Court.*

This Court derives power to issue sanctions through its "inherent power."  "When rules alone to not provide courts with sufficient authority to protect their integrity and prevent abuses of the judicial process, the inherent power fills the gap."  *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1474 (D.C. Cir. 1995).  This inherent power "encompasses the power to sanction attorney or party misconduct, and includes the power to enter a default judgment."  *Id.* at 1475 (citing *Chambers v. NASCO*, Inc., 501 U.S. 32, 43-45 (1991)).

 "Determining whether sanctions are warranted and, if so, what they should include, requires a court to consider both the spoliating party's culpability and the level of prejudice to the party seeking [the records]."  *Rimkus*, 688 F.Supp. at 613.

Courts determine culpability "along a continuum from destruction intended to make evidence unavailable in litigation to inadvertent loss of information for reasons unrelated to the litigation."  *Rimkus*, 688 F.Supp. 2d at 613.  "Prejudice can range along a continuum from an inability to prove claims or defense to little or no impact on the presentation of proof."  *Id.*  "A court's response to the loss of evidence depends on both the degree of culpability and the extent of prejudice."  *Id.*  Intentional destruction with little to no prejudice merits a lesser sanction than "inadvertent loss" resulting in severe prejudice.  *Id.*

Courts are permitted a great deal of latitude in determining the appropriate level of sanctions for destruction of relevant evidence.  *D'Onofrio v. SFX Sports Group, Inc.*, 2010 U.S. Dist. LEXIS 86711, 86714 (D.C. Dist. 2010).  These sanctions range from "fines, awards of attorney's fees and expenses, contempt citations, disqualifications or suspensions of counsel, and drawing adverse evidentiary inferences or precluding the admission of evidence."  *Shepherd*, 62 F.3d at 1475.

Severe sanctions may be imposed when the moving party demonstrates bad faith on the part of the offending litigant. *Shepard*, 62 F.3d at 1476-77, *Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 203 (5th Cir. 2005). This Court may impose monetary fines because there is clear and convincing, if not overwhelming, evidence of the predicate misconduct by EPA in this case. *Shepard*, 62 F.3d at 1478.

Upon the circulation of the litigation hold memorandum, EPA officials were under notice that they were legally obligated to preserve all electronic stored information. These directions were ignored. Landmark had a right to have every repository of every senior official searched and many will never be because they do not exist. This Court expressed, in direct terms, its concern about possible misrepresentations about the FOIA search. Without documents that could have been provided absent spoliation, Landmark has exposed an agency that was as bad, if not much worse, than suspected. What no longer exists could have proven much worse, and this Court is empowered to infer from the spoliation that the spoliated documents would have done so.

This Court can and should infer that it was intentionally deceived for a reason (or reasons), that documents were destroyed because they would have demonstrated misconduct in EPA in directing its operations to achieve partisan political aims, that EPA refused to communicate with Landmark about remediation because it did not want to recover documents, that EPA refused to act on promises to this Court for a reason, that the delays effected by inaction by EPA from the earliest public revelations of losses (before and after discovered by Landmark during depositions) were for a reason.

And, of course, that the decision to not include the Administrator or Deputy Administrator in initial FOIA searches was done for a reason. Mr. Newton (to not include them),

33

Mr. Dickerson (no responsive documents), and Ms. Shaw (no search ever of the Deputy) did what they were supposed to do: subvert FOIA and deceive and obstruct Landmark.  Each is still employed at EPA, rewarded for a job well done.

Landmark initiated this litigation with the express purpose of obtaining records from senior EPA officials documenting their communications with outside individuals and groups. The most senior EPA official admitted that she used her personal emails to communicate with outside individuals and groups and that it was her practice to "mass delete emails."  Yet, EPA took no efforts to search this repository until at least *five months* after she left office.  The most senior EPA official disclosed that she used text messages to communicate with outside individuals and groups and, to Landmark's knowledge, EPA has taken no meaningful action to recover and search these texts.

Plaintiff cannot contemplate a scenario where it could be more prejudiced.  Such damage necessitates the imposition of severe sanctions: legal fees, costs, and a monetary fine in an amount sufficient to deter future wrongdoing.

The appointment of an independent monitor is essential to ensure that EPA complies fully with its obligation to preserve documents and not spoliate.  If EPA won't hire an independent expert to try and recover data, as it did last time, the monitor can.  If EPA ignores its obligations to this Court, the monitor can police EPA on a real time basis.  If EPA promises rolling production and then does not produce (another election is coming up in a few months and EPA is running out the clock, again), a monitor can take over the process and dictate the use of manpower and other resources to get the job done.

EPA cannot be trusted.  A monitor will also provide the independence and expertise necessary to conduct objective and credible supervision of EPA's compliance with this Court's

orders.  This Court has the power to appoint an independent monitor.  *Ex Parte Peterson,* 253 U.S. 300, 312-13 (1920); *Benjamin v. Fraser,* 343 F.3d 35, 46 (2d Cir. 2003) (noting "long-recognized principle that Article III courts may appoint agents to engage in a variety of activities essential to the performance of judicial responsibilities), *overruled on other grounds by Carozzo v. Koreman,* 581 F.3d 63 (2d Cir. 2008).

As a further sanction, EPA should be compelled to review its docket from 2009 to the present and send a notice to all plaintiffs and petitioners of the findings of this Court and of the real possibility that EPA engaged in spoliation in their proceedings.  EPA is a litigation machine and it claims the power to remake the entire physical landscape of the United States.  It may possess those powers (or some of them), but it does not possess the authority to divest its opponents of their rights to an honest process before the courts of this country.  Judgments and consent decrees may be in jeopardy because of the EPA's lawlessness.  Better that than continued trampling of citizens' rights.

Imposition of these sanctions will also deliver a larger message to the EPA and the entire federal bureaucracy to take its data preservations obligations seriously.[8]  Recent news reports state that EPA has failed to adhere to these obligations in other contexts.  EPA Administrator Gina McCarthy recently informed Congress that EPA was unable to obtain requested records because of a computer crash.  Exhibit 32, Timothy Cama, "Another agency tells Congress: File not found."  http://thehill.com/policy/energy-environment/210564-epa-says-hard-drive-crashed-emails-lost, June 25, 2014.   EPA delayed informing the National Archives about the crash and when pressed whether the failure to back up the documents was a violation of the Federal

---

[8] The Internal Revenue Service lost communications belonging to former official Lois Lerner when her computer crashed in June 2011.  See, Exhibit 31, Josh Hicks, "IRS commissioner offers no apology for missing Lerner e-mails."  Washington Post, June 20, 2014.

Records Act, McCarthy said, "We may have some emails that we cannot produce that we should have kept." *Id.*

Again and again and again. EPA does what it does because it thinks it can with impunity.


## IV. CONCLUSION

For reasons stated herein, Landmark respectfully requests that its motion be granted and that this Court enter its order:

1. Grant Landmark's Motion for Sanctions and enter an Order finding that EPA has engaged in spoliation of Agency documents and document-containing repositories;

2. Award Plaintiff its reasonable attorney's fees and costs incurred in this litigation;

3. Designate an independent monitor, reporting to this Court and Plaintiff, to be paid by EPA, to assure that neither Landmark nor any other person be denied their rights to the preservation of agency documents in litigation and to direct the prompt collection of all responsive documents under the Landmark FOIA request pursuant to the agreed-upon new search protocol;

4. Command EPA to employ whatever resources are necessary to complete its search and production obligations under the new search protocol within 30 days;

5. Direct EPA's Inspector General to investigate and report to Landmark and this Court within 30 days on all spoliation issues involving each and every senior official covered by Landmark's FOIA request;

6. Direct that EPA review its docket from 2009 to the present and send a notice to all plaintiffs and petitioners of the findings of this Court and of the real possibility that EPA engaged in spoliation in their proceedings;

7.      Enter such other relief this Court deems necessary and proper in the

circumstances, including the awarding to Plaintiff of monies in the form of a fine

sufficient to deter EPA from committing misconduct in the future.

                                          Respectfully submitted,

July 24, 2014                             Landmark Legal Foundation


Arthur F. Fergenson                       s/ Michael J. O'Neill
Ansa Assuncao                             Michael J. O'Neill #478669
3545 Ellicott Mills Dr.                   Mark R. Levin
Suite 201                                 Matthew C. Forys
Ellicott City, MD 21043                   Landmark Legal Foundation
410-203-1247                              19415 Deerfield Ave
Arthur.Fergenson@ansalaw.com              Suite 312
                                          Leesburg, VA 20176
                                          703-554-6100
                                          703-554-6119 (facsimile)
                                          mike@landmarklegal.org

                                          Richard P. Hutchison
                                          Landmark Legal Foundation
                                          3100 Broadway, Suite 1210
                                          Kansas City, MO 64111
                                          816-931-5559
                                          816-931-1115 (facsimile)
                                          rpetehutch@aol.com

**CERTIFICATE OF SERVICE**

Undersigned counsel hereby certifies that a true and accurate copy of the foregoing

MEMORANDUM OF POINTS AND AUTHORITIES was filed electronically with this Court

by using the CM/ECF system on this 24th Day of July, 2014. Parties that are registered CM/ECF

users will be served by the District Court's CM/ECF system.


/s/ Michael J. O'Neill_____
Michael J. O'Neill
Attorney for Plaintiff