## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

LANDMARK LEGAL FOUNDATION

Plaintiff,

vs.

ENVIRONMENTAL PROTECTION AGENCY,

Defendant.

**Case No. 1:12-cv-01726 (RCL)**

## PLAINTIFF LANDMARK LEGAL FOUNDATION'S REPLY TO DEFENDANT ENVIRONMENTAL PROTECTION AGENCY'S RESPONSE TO LANDMARK'S MOTION FOR SPOLIATION SANCTIONS

Failure to meet this obligation could not only jeopardize the successful litigation of this matter, it could result in court sanctions against the Agency or individual employees, such as:

Personal sanctions against individual government employees (e.g., potential personal liability) or the U.S. Department of Justice ("DOJ") or Agency attorneys (e.g., fines and/or professional sanctions, including disbarment); and/or

Sanctions against the United States including adverse inferences against the Agency, monetary sanctions, and/or exclusion of evidence.

Plaintiff Landmark Legal Foundation's Memorandum in Support of its Motion for

Spoliation Sanctions ("Plaintiff's Memorandum" or "Pl.'s Memorandum"), Ex. 2, October 23,

2012 Litigation Hold Notice ("Litigation Hold") (PACER Dkt. 46-3).

The extent to which EPA has spoliated evidence in this case is worse than Landmark

believed.  EPA discloses for the first time in its opposition memorandum that ALL text messages

on ALL EPA employee BlackBerries were erased between February 15 and 18, 2013, that EPA

took no steps at any time to ensure compliance with the litigation hold directing the preservation of those text messages, that no search was conducted of the Deputy Administrator's records prior to April 29, 2013, and that no inquiry was made into the text messaging and personal email usage practices of senior EPA officials prior to EPA's preparation of its response to Plaintiff's spoliation sanctions motion.

(1) EPA issued a litigation hold directive to prevent spoliation, and it was ignored.

(2) EPA did not send its first litigation hold directive to the then-Administrator of the EPA even though her records were central to the litigation and to the FOIA request that was its basis.

(3) EPA's only steps to ensure an adequate and timely search of then-Administrator Lisa Jackson's records involved a conversation between Ms. Jackson and her Administrative Assistant, Aaron Dickerson and a cursory search by him of her official government email account.  It did not include a search of her text messages or her personal email account.  Nor were they preserved for later search by anyone.

(4) EPA never searched then-Deputy Administrator Robert Perciasepe's records before seeking time to do a "re-search" of his records from this Court on April 29, 2013.

(5) EPA never conducted an audit or independent review of Ms. Jackson or Mr. Perciasepe's communication practices to ensure that potentially responsive personal emails and text messages were preserved by any manner under any circumstances, much less in this case.

(6)  EPA never took any steps to ensure BlackBerries or other mobile communication devices belonging to senior officials were secured and searched for responsive records.

(7) EPA never performed a search of senior officials' text messages.  *We now know that every text message on all EPA BlackBerry devices, including the former Administrator and Deputy Administrator's, as well as other senior officials covered by the Litigation Hold, were erased by EPA between February 15 and 18, 2013.*

(8) Because a "for political reasons" screen was used on the production of documents, Pl.'s Memorandum at 11, no production was ever made to Landmark in response to its FOIA request as submitted and agreed to by EPA.  Only now are documents trickling in.

(9) EPA filed materially false declarations with this Court and has not withdrawn them.  Based upon Nena Shaw's declaration, declarant Eric Wachter knew that his sworn statements were false or made them with reckless disregard of the truth and of his obligations to this Court and to Landmark.

(10)    The records on the BlackBerries and in personal email accounts of the senior officials of EPA were destroyed after this litigation was commenced and without being reviewed for the presence of potentially responsive records even though EPA business was conducted through use of these devices and in these accounts.

For each and all the misconduct shown, this Court should issue a broad range of remedies and sanctions.  What happened in 2001 EPA was last before this Court on the failure to preserve documents did not reach the level of systemic and purposeful misconduct demonstrated by EPA before this Court and in its dealings with Landmark.  EPA is running a shadow government immune from review by the public and in defiance of our courts.  It must stop.

**A.       EPA's Litigation Hold Properly Bound It to the Full and Appropriate Rigor of its Terms, As It Proudly Announced to this Court When It Suited Its Purposes.**

Only now does EPA claim that it was not obligated to do what it said it was required to do in the Litigation Hold:  it "should not be punished for issuing a litigation hold that was broader than necessary."  Defendant's Opposition To Plaintiff's Motion For Sanctions ("Def.'s Opp.") at 15 (PACER Dkt. 55).  First, it provides no case authority to support this position.  EPA thought it had to do what it instructed all employees to do in order to comply with the law and its responsibilities to courts and litigants.

Second, the fact that EPA never performed any audit or review of EPA officials' practices pertaining to preservation and forwarding of personal emails into official EPA repositories necessitates a carefully calibrated and inclusive litigation hold.  Aware that officials used their personal email to conduct agency business (because it purportedly wanted employees to forward these emails to EPA accounts), EPA instructed those officials to preserve "potentially relevant" emails residing in personal email accounts.  EPA officials were under a "responsibility for preserving the emails in your personal account."  Litigation Hold at 6.  As EPA never performed an audit or review of officials' practices regarding the use of personal email to conduct Agency business, the only way to ensure the preservation of responsive records was to issue a broadly worded litigation hold.  Which was ignored.

EPA's chutzpah is astonishing:  In its Def.'s Reply Mem. at 3 (PACER Dkt. No. 35), EPA explicitly relied before this Court upon its scrupulous adherence to this very same Litigation Hold to protect it in this litigation: "EPA issued an agency-wide policy requiring the maintenance and preservation of electronically stored information subject to litigation holds, which would include the information from the former Administrator responsive to this request."  Now that EPA has been caught violating this very same Litigation Hold, it says "Never mind."

In his July 24 Declaration, Eric Wachter swore to this Court that he "certified that I read and understood the meaning and scope of the litigation hold notice" and "instructed my staff to comply with all preservation obligations for relevant information concerning this FOIA request and FOIA litigation." Def.'s Reply. Mem., Wachter July 24 Dec., ¶¶ 31, 32 (PACER Dkt. No. 35-7).

Every act committed by EPA in this litigation should be judged by the standard set by its legal staff in crafting the Litigation Hold, which Mr. Wachter and EPA wrap around their shoulders to assure this Court and Landmark of their legal bona fides.

**B.        Landmark Was (and Is) Entitled to Documents, Not Memory.**

EPA presents evidence that a recent survey of 17 senior officials subject to the Litigation Hold found that none of them remembered using text messages two years ago to discuss pending or proposed agency rules or regulations. Declaration of Larry Gottesman, ¶ 7 ("Gottesman Dec.") (PACER Dkt. 55-8). The role of memory in this case has already been proven wanting, given the failure of the "memory test" applied to former Administrator Jackson when she was asked if she remembered anything responsive to Landmark's FOIA request.

The purported responses from the 17 senior officials are self-serving, and because the documents themselves are non-existent, the responses are not subject to verification. This informal survey is not what EPA itself demanded of its officials and of itself in the face of litigation. Landmark is entitled to preservation and EPA provided destruction.

Ms. Hearns declares that Verizon Wireless only preserves the content of text messages for 10 days after the message is sent, and then noncontent data relating to the text for up to a year. But Verizon was not the only place to find text messages. Text messages were stored on individual BlackBerry devices, and would remain thereon until erased, as Ms. Hearns states,

although not in the clearest fashion.   Combining various sentences in paragraphs 4 and 5 of her Declaration, Ms. Hearns discloses that text messages "are stored locally on the Blackberry device" itself and would be erased ("removed") if not backed up prior to the transition. Only "email, calendar, contacts, and to dos" would be preserved on the servers.  Everything else would be erased, including text messages.  The reference guide warning of the need to backup to preserve made no mention at all of text messages, restricting itself to "pictures, applications, email, calendar and contacts."

Ms. Hearns discloses that all EPA BlackBerries were "erased" between February 15, 2013 and February 18, 2013.  Hearns Dec., ¶ 4.  Ms. Hearns also demonstrates that EPA took no action to ensure that officials were in compliance with the Litigation Hold prior to the wholesale removal of records from all agency BlackBerries.

EPA makes no claim that any text message was preserved from the BlackBerries and there is no evidence that EPA took steps to ensure that the officials subject to the Litigation Hold followed the preservation procedure, or that a single EPA senior official ever did so. The survey report of the "memory" of the EPA senior officials is telling: their memories would not have to be consulted had they saved the text messages.

Each of the EPA-issued smart phones was, therefore, a unique physical repository of potentially responsive materials covered by EPA's obligations under FOIA and the conditions enumerated in its own litigation holds.  None of these repositories was ever searched and all of them were destroyed by EPA in February, 2013.

### C.     Nena Shaw Deepens Eric Wachter's Falsehoods.

Landmark identified false statements within the declarations of Eric Wachter regarding the search of the Deputy Administrator's records.  Pl.'s Memorandum at 20-23.

On May 15, 2013 Eric Wachter declared:

> In the course of finalizing the materials for this April 30, 2013, deadline, my office determined that the search for documents from the former Administrator, the Deputy Administrator, and the Chief of Staff in the Office of the Administrator may have been insufficient.  In the interest of a complete and adequate response to Plaintiff's request, the EPA determined that *another* search would be required of the accounts of the former Administrator, Deputy Administrator, and Chief of Staff in the Office of the Administrator.

(emphasis added) Declaration of Eric Wachter, May 15, 2013 ("Wachter May 15 Dec."), ¶ 19 (PACER Dkt. No. 30-1).

He repeated this statement in his July declaration, adding the assurance that his office had "carefully reviewed the document search that was performed between October 23, 2012, and January 25, 2013."  Declaration of Eric Wachter, July 24, 2013 ("Wachter July 24 Dec."), ¶ 21.

Mr. Wachter declared twice that a search—albeit insufficient—had already been conducted and "another" search of the Deputy Administrator's records was necessary.  No search had ever been performed. Pl.'s Memorandum, Ex. 5, Deposition of Jonathan Newton ("Newton Dep.") at 48:8-11 (PACER Dkt. 46-5).

Mr. Wachter knew that no search had been performed when he declared under oath twice that it had.

EPA submits a declaration from Nena Shaw.  Ms. Shaw's declaration confirms that Mr. Wachter knowingly submitted false statements to this Court.  "After I received the request from Jonathan Newton on November 14, 2012, I searched Mr. Perciasepe's records as soon as I could, given my other duties and responsibilities."  Declaration of Nena Shaw ("Shaw Dec."), ¶ 6. (PACER Dkt. 55-9).  "As soon as she could" is an elastic concept: On December 19, 2012, she wrote to Jonathan Newton: "Jonathan – Did you say something to me about a "Landmark FOIA? I am not finding it."  Shaw Dec., Exhibit 3.

Ms. Shaw did not know "how to best conduct a search" so she contacted Robin Kime from the Office of Policy for help.  Shaw Dec. ¶ 7.  She received an email from Ms. Kime on December 20, 2012, with search criteria. *Id.,* ¶ 8.  She purportedly used Ms. Kime's criteria to search the Deputy Administrator's computer and email accounts at some point thereafter (whenever that might have been).  She did not search or ask to search "text messages, personal email accounts, or other devices or repositories" because she believed (on what basis is unexplained) "any material in those locations was to be maintained in EPA's email system for search and production . . .."  *Id.,* ¶  9.

Ms. Shaw claims that she found responsive records after she conducted her "search" but was unable to upload them into the database for review and production to Landmark.  *Id.,* ¶ 10.  After receiving an email from Mr. Newton on January 17, 2013, that EPA was under a deadline to respond, she waited almost two weeks, and on January 30, 2013, she claims that she tried to upload the documents again, but failed.  *Id.,* ¶¶ 11,12.  She printed out the responsive records, she claims, but does not recall what happened to them and she took no other action to ensure that the documents were uploaded.  *Id.,* ¶ 12.  And so ended her "search." What we do know from Ms. Shaw is that no responsive documents from the Deputy's records were ever presented to Mr. Wachter or his office (or anyone else) and that responsive documents existed in the records of the Deputy.

Those documents have not been preserved and are spoliated.  Eric Wachter declared to this Court in his sworn statements that the search for documents in all EPA Headquarters Offices had been complete by January 25, 2013, even though Ms. Shaw declares she was still trying to upload documents as late as January 30, 2013.

Mr. Wachter went to great lengths in his two declarations to convince this Court that his office had completed a thorough and diligent search so that this Court would grant EPA's motion for summary judgment.  Mr. Wachter declared that in January, 2013, EPA's Office of General Counsel (OGC) contacted his office to check on the status of collection and processing of documents in this case.  Wachter May 15 Dec., ¶ 13.  Mr. Wachter's staff and OGC staff "then contacted assigned individuals in the Office of Air and Radiation, the Office of Water, and the Office of Chemical Safety and Pollution Prevention who had not yet completed their search and collection of responsive records to remind them of the upcoming production deadline."  Wachter May 15 Dec., ¶ 13.  All other offices, perforce, had done so, including the Deputy Administrator's office. This was, of course, false.

His statement, though, does define an essential element of a "search" requires to be: presentation of found documents to the responsible authority within EPA(his office) for review and preparation for presentation to the FOIA requester.  No documents turned over means no search.

Mr. Wachter further declared that soon thereafter the initial collection of documents, which had begun on October 23, 2012, was closed:

> The initial document collection was closed on January 25, 2013.  At that point my office had either received a no-records response or had coordinated the collection of documents from the immediate office of the Office of the Administrator, and from Assistant Administrators, Deputy Assistant Administrators, and Chiefs of Staff in the EPA's Office of Water (OW), Office of Air and Radiation (OAR), Office of Solid Waste and Emergency Response (OSWER), Office of Chemical Safety and Pollution Prevention (OSCPP), Office of Enforcement and Compliance Assurance (OECA), and Office of General Counsel, as well as documents from the associate administrator and deputy associate administrator in EPA's Office of Policy.

Wachter May 15 Dec., ¶ 15.

The immediate office of the Office of the Administrator includes the Deputy Administrator.  Pl.'s Memorandum Exhibit 4, Deposition of Jonathan Newton ("Newton Dep.") 10:18-22.  (PACER Dkt. 46-5).

Mr. Wachter repeated this in his Supplemental Declaration of July 24, 2013: about the closing of initial document collection and how his office had received a no-records response or had coordinated the collection of documents from various offices, including the immediate office of the Office of the Administrator.  Wachter July 24 Dec., ¶ 18.  Yet he couldn't have received a no-records response from Ms. Shaw or collected documents from her by January 25, 2013, according to her declaration.  She was still trying to upload documents on January 30, 2013.

When he swore to this Court, Mr. Wachter told this Court that he and his office had a system in place to assure that searches had been completed and reported by everyone subject to the FOIA request, including the Deputy Administrator.  Mr. Wachter declared that Mr. Newton sent an email to Ms. Shaw instructing her to search for responsive documents and upload them into the collection database.  Wachter July 24 Dec., ¶ 17.  Mr. Wachter emphasized how his office had been able to monitor who had uploaded responsive documents into the database: "Each headquarters office was individually responsible for uploading their responsive documents to the collection database.  My staff and OGC staff were able to track who had uploaded documents into the records collection database after the documents were uploaded." Wachter May 15 Dec., ¶ 12.  But according to Ms. Shaw's declaration, she never uploaded any documents to the database.

Mr. Wachter knew that no search had been conducted of the Deputy's records as of April 29, 2013, and swore under oath to this Court twice that it had.  Those declarations remain before

this Court.  By taking no corrective action, EPA and Mr. Wachter adopt those falsehoods as true even today.

**D.      EPA Has Consistently Delayed In the Performance of Its Obligations to Landmark.**

The multitude of EPA's delays and failure to take timely action are detailed in Landmark's Memorandum in Support.  Landmark submitted no fewer than five demands to opposing counsel that EPA take immediate steps to recover, search, and produce records-- including text messages--from all relevant personal email repositories and BlackBerries for Ms. Jackson and all other senior officials.   Pl.'s Memorandum at 27.  These demands were ignored. *Id.*  It appears that it was not until the filing of Landmark's spoliation sanctions motion that EPA directed its Senior FOIA Officer, Larry Gottesman, to conduct an inquiry into the use and preservation practices of senior officials pertaining to text messages and personal emails. Gottesman Dec.  It took the filing of the instant motion to spur EPA to inform Landmark of the results of its inquiries to Verzion on whether text messages were recoverable.  Hearns Dec., ¶ 17

EPA's repeated claim of cooperation is belied by its repeated failures to cooperate.  For example, EPA points to its recent production of "briefing" material as promised earlier this summer.  However, the production was utterly nonresponsive.  For reasons set forth in a responsive email, however, Landmark notified EPA that it "reject[ed] as utterly nonresponsive EPA's most recent record production."  Arthur Fergenson Email to Heather Graham-Oliver, Sept. 10, 2014 (Exhibit 1, attached.)

EPA's gross negligence resulted in the destruction of potentially responsive records in the form of personal emails and text messages.  Its utter failure to take steps to timely recover these records, its misrepresentations and its repeated delays, establish EPA's bad faith.

**E.    The Destroyed Records Are Relevant For Purposes Of Awarding Sanctions.**

EPA asserts that records residing on personal email repositories are not "agency records" subject to FOIA.  Def.'s Opp. at 11.  Whether or not the destroyed materials constitute "agency records" under FOIA is beside the point.  EPA officials destroyed materials contrary to the mandates of the Litigation Hold.  EPA's lawyers believed that EPA was under an obligation to preserve these records, and they were correct.

EPA confuses its responsibilities under the law. While EPA is under a duty to preserve records in conformance with both FOIA and the Federal Records Act, it is under a heightened duty to preserve records that may be relevant to litigation.  "Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents."  *Zubulake v. UBS Warburg*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) (internal citations omitted).

Aware of the relevance of personal emails and text messages, EPA directed officials to preserve "all ESI [Electronically Stored Information]."  Litigation Hold at 2.  The Litigation Hold also stated the need to preserve potentially responsive materials wherever it may reside:

> It does not matter whether the ESI is stored on optical disks (e.g., DVDs and CDs), flash memory (e.g., "thumb," "flash," or other USB drives), PDAs or mobile/smart phones (e.g. BlackBerry), network drives (e.g. F,G,H, J, R, and Z drives), your EPA-issued desktop and/or laptop computer, privately owned computers or other devices, or in personal email accounts.

*Id.* at 3.

It also instructed that all emails on personal accounts be preserved even if forwarded to an Agency account:

> Refrain from using your personal email account for Agency business.  If you use or have used your personal email account for Agency business, do not delete any PRI [potentially relevant information] from your personal email account.  You may have to intervene in order to prevent such emails from being automatically

12

> deleted.  *Forwarding emails from your personal email account to your agency*
> *account will not relieve you of the responsibility for preserving the emails in your*
> *personal account.*

*Id.* at 6 (emphasis added).

"Responsibility" is a strong word, and appropriately so.

EPA's destruction of personal emails and text messages before they could be reviewed to determine if they were potentially relevant to the issues in this litigation is spoliation.  EPA knew that personal email accounts and BlackBerries were repositories of potentially relevant information.  The Agency took no steps to ensure that then-Administrator Jackson or other senior officials searched their personal emails or text messages.  Pl.'s Memorandum 25-30.

EPA improperly describes the body of relevant documents that the Defendant had a duty to preserve and not spoliate.  Def.'s Op. at 5.  They have designed a test for relevance that is too narrowly focused.  Certainly, documents that would have been responsive to Landmark's FOIA request were relevant and should not have been destroyed.  Yet Landmark also raised in its motion, which EPA fails to address, that documents were spoliated that went to the issues of 'whether the search was adequate and the degree of culpability of EPA and its officials. . .."  Pl.'s Memorandum at 2.

## F.  Emails Residing In Personal Email Accounts Are Subject To Protection Against Spoliation.

EPA incorrectly asserts that emails residing in personal email accounts are not under EPA's possession, custody and control.  Actual possession of the documents is not the proper test of whether a record is within the agency's control.  When an agency employee creates a record "in the legitimate conduct of [his] official duties" at the agency, and the agency does not indicate that it "lacks authority over, or the ability to retrieve [the records]," such records are

"within the agency's control for purposes of the FOIA." *Judicial Watch v. Dept. of Energy*, 412 F.3d 125, 133 (D.C. Cir. 2005).

By commanding in its Litigation Hold the retention of potentially relevant records in personal email accounts, EPA was exercising authority over the records.  Whether or not the records in the repositories are "agency records" under FOIA or were required to be maintained under the Federal Records Act, does not relieve the EPA from its obligation to preserve documents against spoliation.  Nor, in this case, were potentially relevant documents limited to those producible under FOIA, because the search itself became an issue upon the filing of this litigation.

While EPA argues that the personal emails were not "agency records" for FOIA, the commands of record preservation in the face of litigation are far broader.

Even if the analysis were restricted to what might have been ordered produced under FOIA, the "burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not agency records." *Tax Analysts v. Department of Justice*, 492 U.S. 136, 142 n. 3 (1998).  Should an analysis of whether a document constitutes an "agency record" provide an inconclusive result, the document would constitute an "agency record" and would be subject to production under the FOIA.  *Judicial Watch v. United States Secret Service*, 726 F.3d 208, 220 (D.C. Cir. 2013).

Congress clarified what constitutes a "record" under FOIA in the OPEN Government Act of 2007, applying the term "and any term . . . in reference to information" to include:

> (A) any information that would be an agency record subject to the requirements of this section when maintained by an agency in any format, including an electronic format; and

(B) any information described under subparagraph (A) that is maintained for an agency by an entity under Government contract, for the purposes of records management.

5 U.S.C. § 552(f)(2)(A) & (B).

The term "agency records" encompasses those documents that an agency "create[s] or obtain[s]," and "control[s]… at the time the FOIA request [was] made." *Judicial Watch v. United States Secret Service*, 726 F.3d 208, 216 (D.C. Cir. 2013) (*citing Tax Analysts v. Dept. of Justice*, 492 U.S. 136, 144-45 (1998)).  Four factors are considered to determine whether an agency has sufficient control over a document to make the document an "agency record": (1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which the agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files.  *Tax Analysts v. Dept. of Justice*, 845 F.2d 1060, 1069 (D.C. Cir. 1988).

In this case, all documents on all BlackBerries in EPA were destroyed and all documents on all personal email accounts of all senior officials are spoliated.

Although these factors are routinely utilized to determine whether a record is within the agency's control, it is not necessary for all four factors to be given equal weight nor is it necessary for all four factors to be present.  While the D.C. Circuit stated in *Tax Analysts*:  "All four factors must be present before an agency has sufficient 'control' over a document to make it an 'agency record.'" *Tax Analysts*, 845 F.2d at 1069, it has also stated that "its descriptions [of the four factor test] do not make clear whether the factors should receive equal weight." *Judicial Watch v. United States Secret Service*, 726 F.3d at 220.  The application of these four factors "reveals its considerable indeterminacy." *Id.*  "In some cases [the D.C. Circuit has] heeded the

suggestion in *Tax Analysts*, finding that documents were not 'agency records' when fewer than all four factors pointed in that direction. In other cases we have found that documents were 'agency records' even though fewer than four factors indicated as much." *Id.*

Ms. Jackson--EPA's Chief Executive Officer and a Cabinet level official of the United States Government--admitted to using her personal email to conduct Agency business. Jackson Dep. at 41:1-6. Such an admission justifies a conclusion that emails residing in her personal email account are "agency records" for purposes of FOIA.

Yet, she never even looked at her personal email account or her BlackBerry to determine potential relevance to this (or any, apparently) litigation, and no one else did either. And then they were erased.

## G.   Relevance and Prejudice Are Proven.

EPA erroneously asserts that Landmark must first demonstrate that responsive records residing in personal email accounts were not captured on EPA systems and thus not searched and not produced. Def.'s Opp. at 12. EPA's gross negligence and bad faith support an inference of relevance. "*Relevance and prejudice* may be presumed when the spoliating party acted in bad faith or in a grossly negligent manner." *Pension Committee*, 2010 U.S. Dist. LEXIS 4546 at *19 (emphasis added). For spoliation sanctions to accrue, Landmark is not obligated to show that destroyed records would have been subject to disclosure under the FOIA.

In cases where a spoliating party has merely been "negligent" courts impose severe sanctions when the innocent party demonstrates "both relevance and prejudice." *Pension Committee*, 2010 U.S. Dist. LEXIS 4546 at *19. The innocent party "must present extrinsic evidence tending to show that the destroyed [records] would have been favorable to [its] case." *Id.* at *20 (internal citations omitted). The prejudiced party, however, must not be held "to too

strict a standard of proof regarding the likely contents of the destroyed [or unavailable] evidence, because doing so 'would . . . allow parties who have . . . destroyed evidence to profit from that destruction.'" *Id.* (internal citations omitted).

EPA's malfeasance surpasses simple negligence: Landmark's discovery efforts have uncovered abundant "extrinsic evidence" showing that destroyed personal emails and text messages would have been subject to disclosure pursuant to Landmark's FOIA request that was directed to communications between her and anyone in or out of government about pending rules and regulations. EPA never limited the substantive reach of Landmark's FOIA request and never asked to have it limited. The very breadth of Landmark's request renders incredible EPA's claim that responsive records were unlikely to have existed on the deleted repositories of its senior officials.

The breadth of the FOIA request is matched by the breadth of EPA's use of these deleted repositories. Ms. Jackson testified that she used a BlackBerry to communicate with individuals and groups outside of EPA. Jackson Dep. at 26:17-27:3. For Ms. Jackson, "being accessible to the people I serve [was] very important." *Id.* at 28:12-13.

Ms. Jackson did not perform a search of her personal email account to determine whether there were responsive records to Landmark's FOIA until July or August of 2013, at least five months after she left her position as Administrator. *Id.* at 55:20-21. EPA never conducted a search of Ms. Jackson's personal email account. Dickerson Dep. at 38:14-16. Neither EPA nor any other representative from the government communicated any instructions to Ms. Jackson regarding preserving personal emails until "August or July of 2013." Jackson Dep. at 55:20-21.

Regarding text messages, additional extrinsic evidence regarding the text message practices of EPA officials has recently come to light. In an opinion issued on September 4, 2014,

17

the Honorable Rosemary M. Collyer, U.S. District Judge for the District of Columbia, found: "Administrators of the Environmental Protection Agency have made prolific use of government-issued smart phones to send thousands of text messages." *Competitive Enterprise Institute v. EPA* (D.C.D. Case No. 13-1532 (RMC)) (September 4, 2014 Opinion of Judge Rosemary M. Collyer) (attached as Exhibit 2).  A document disclosed "certain metadata showing 5,392 text messages sent or received by [Director of Office and Air Radiation during the time covered by Landmark's FOIA request, now Administrator Gina] McCarthy during billing periods from July 2009 to July 2012." *Id*. at 7.

The scale of record destruction, as evidenced from EPA's Opposition to this motion, is stunning.  EPA should not be rewarded for its actions.

**H**.   **Attorney Fee's Sanctions May Be Ordered.**

Imposing sanctions for spoliation "arises from a court's inherent power to control the judicial process and litigation …"  *Silvestri v. General Motors*, 271 F.3d 583, 590 (4th Cir. 2001). A trial court "has a great deal of discretion in exercising its inherent powers to fashion an appropriate sanction…"  *D'Ononfrio v. SFX Sports Group*, 2010 U.S. Dist. LEXIS 86711, *14 (D.D.C. 2010).  The inherent power, however, "must be exercised with restraint and discretion." *Chambers v. NASCO*, 501 U.S. 32, 44 (1991).  When exercising such discretion, a court must have the "ability to fashion an appropriate sanction for conduct which abuses the judicial process*."  Id*. at 45.

Available sanctions include default judgment or dismissal.  *Id*.  They also include "fines, awards of attorneys' fees and expenses, contempt citations, disqualifications or suspensions of counsel, and drawing adverse evidentiary inferences or precluding the admission of evidence." *Shepard v. Am. Broad. Cos.*, 62 F.3d 1469, 1475 (D.C. Cir. 1995).

Defendant erroneously relies on this Court's decision in *Alexander v. F.B.I.*, 541 F. Supp. 2d 274, 301 (D.D.C. 2008) to justify its assertion that attorney's fees are unavailable.  Def.'s Opp. at 9.  In *Alexander*, this Court stated that the power to impose monetary sanctions against the government arises "when, under a particular statute, the government has waived sovereign immunity."  *Id.* at 301.

Congress authorized the imposition of attorney's fees on parties that prevail under the FOIA.  "A court may assess against the United States reasonable attorney fees and other litigation costs incurred under this section in which the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E)(i).  A complainant has "substantially prevailed if the complainant has obtained relief through either--a judicial order, or an enforceable written agreement or consent decree; or a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial."  5 U.S.C.  § 552(a)(4)(E)(ii).

Plaintiffs "can now qualify as 'substantially prevail[ing] and thus become eligible for attorney fees, without winning court-ordered relief on the merits of their FOIA claims." *Brayton v. Office of U.S. Trade Representative*, 641 F.3d 521, 525 (D.C. Cir. 2011).  This broad standard reflects Congress's intent when it passed the OPEN Government Act of 2007.  *Id.*

Should this Court order "relief" by finding spoliation by judicial order, it may, under the plain terms of the FOIA statute, couple that relief with an award of attorney fees, and under *Brayton*, the predicate relief does not need to be on the merits of the FOIA claims.

**I.**     **Sanctions Are Necessary When A Party Engages In Gross Negligence Resulting In Spoliation.**

A party must demonstrate the predicate misconduct by a clear and convincing standard. *Shepherd*, 62 F.3d at 1478 (D.C. Cir. 1995).  Imposition of attorney's fees and other putative

sanctions are appropriate when a litigant has acted in "bad faith."  *Alexander*, 541 F. Supp. 2d at 304.

Defendant erroneously claims that the imposition of attorney's fees and fines is *only* appropriate when a litigant "is substantially motivated by vindictiveness, obduracy, or mala fides."  Def.'s Opp. at 10 (*citing Pacificorps v. Northwest Pipeline GP*, 2012 U.S. Dist. LEXIS 174593 *30-31 (D. Or. Dec. 10, 2012)).  Attorney's fees and other punitive sanctions are justified when a litigant's gross negligence results in the destruction of relevant or potentially relevant records.  *Pension Committee*, 2010 U.S. Dist. LEXIS 4526.

Gross negligence includes a failure "to identify all of the key players and to ensure that their electronic and paper records are preserved," and a failure "to cease the deletion of email or to preserve the records of former employees that are in a party's possession, custody, or control."  *Id.* at *32.  Such failures subject the offending party to sanctions.  *Id.*

Even when a party has not "engaged in conduct intended to thwart discovery through the purposeful destruction of documents" sanctions are still necessary when that party undertakes a "haphazard and uncoordinated approach to document retention" that "indisputably denies its party opponents potential evidence to establish facts in dispute."  *In Re Prudential Insurance Co.*, 169 F.R.D. 598, 615 (D.N.J. 1997).  The duty to preserve records extends all the way up the management chain.  Senior leadership has the responsibility "to establish and distribute a comprehensive document retention policy, it cannot shield itself from responsibility because of field office actions."  *Id.*  Preserving "potentially discoverable materials is an affirmative [duty] that rests squarely on the shoulders of senior corporate officers."  *Id.*

**CONCLUSION**

EPA has spoliated documents and repeatedly delayed attempting to recover them.   It has submitted declarations containing false statements and has left those declarations in this Court long after the falsity was demonstrated to all. Because the purpose of this litigation is to compel production of these documents, spoliation prevents Landmark from obtaining a full and fair search for and production of records.  Landmark has therefore requested this Court exercise its inherent powers and levy sanctions upon EPA, which sanctions should now include a finding on the merits of Landmark's concern that prompted its FOIA request: that EPA postponed rules and regulations until after the 2012 election in order to advantage the re-election of the President.

One of those sanctions requested is the appointment of an independent monitor to protect other litigants and the public from further EPA misdeeds, and to get to the bottom of the wrongdoing Landmark has exposed in this case.

The findings of Judge Collyer about the widespread use of text messages by Administrator McCarthy and the entire officialdom of EPA demonstrates the urgency of the appointment of the independent monitor.  EPA is running an illegal, shadow government operation, shielded from the very public accountability that FOIA dictates.  The disclosures to date point to the wholesale denial of rights to litigants in every and all litigation that EPA has been involved in for many years.  Spoliation is the order of the day.  Because EPA officials operate without review or disclosure of text messages, EPA officials are free from legal accountability.

Until now.

EPA cannot be trusted to clean its own house, as evidenced by its actions years ago and its more serious systematic denial of legal rights over the last several years (or longer).  EPA is a

serial violator and its recidivism shows how seriously it takes its obligations to the public and the federal judiciary: not at all.

Landmark has largely done what it can to expose this wrongdoing, but has no direct access to EPA files and cannot interview EPA employees.  An independent monitor can.  In light of Judge Collyer's findings and the fact questions raised in EPA's new declarations, Landmark should be allowed to continue its exploration of EPA spoliation policy with depositions of the current Administrator, the new declarants, and others, provided that EPA pays for all costs and attorneys fees.  Landmark, however, does not need any new evidence to file this motion or to pursue the requested relief.

Landmark asks that this Court grant a hearing on the motion as soon as may be practicable; that this Court grant the motion; and that it enter such relief as it deems warranted.

<div style="text-align:right">Respectfully submitted,</div>

September 24, 2014

<div style="text-align:right">Landmark Legal Foundation</div>

<div style="display:flex; justify-content:space-between">
<div>
Arthur F. Fergenson<br>
Ansa Assuncao<br>
3545 Ellicott Mills Dr.<br>
Suite 201<br>
Ellicott City, MD 21043<br>
410-203-1247<br>
Arthur.Fergenson@ansalaw.com
</div>
<div>
<u>s/ Michael J. O'Neill</u><br>
Michael J. O'Neill #478669<br>
Mark R. Levin<br>
Matthew C. Forys<br>
Landmark Legal Foundation<br>
19415 Deerfield Ave<br>
Suite 312<br>
Leesburg, VA 20176<br>
703-554-6100<br>
703-554-6119 (facsimile)<br>
mike@landmarklegal.org<br>
<br>
Richard P. Hutchison<br>
Landmark Legal Foundation<br>
3100 Broadway, Suite 1210<br>
Kansas City, MO 64111<br>
816-931-5559<br>
rpetehutch@aol.com
</div>
</div>

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that a true and accurate copy of the foregoing

MEMORANDUM OF POINTS AND AUTHORITIES was filed electronically with this Court

by using the CM/ECF system on this 24 of September, 2014. Parties that are registered CM/ECF

users will be served by the District Court's CM/ECF system.

/s/ Michael J. O'Neill
Michael J. O'Neill
Attorney for Plaintiff